UNITED STATES, Appellee

v

BRIAN L. PHARE, Specialist Four, U. S. Army, Appellant

21 USCMA 244, 45 CMR 18

No. 24,318

March 17, 1972

Captain *Bruce Topman* argued the cause for Appellant, Accused. With him on the brief were Colonel *George J. McCartin, Jr.,* Major *Alan W. Cook,* and Captain *Robert H. Dickman.*

Captain *Thomas W. Phillips* argued the cause for Appellee, United States. With him on the brief were Colonel *David T. Bryant,* Lieutenant Colonel *Ronald M. Holdaway,* and Captain *Walter A. Smith, III.*

## Opinion of the Court

DUNCAN, Judge:

The appellant was convicted by general court-martial of one specification alleging the violation of a lawful general regulation, by having in his possession a hypodermic needle—Article 92, Uniform Code of Military Justice, 10 USC § 892. He was sentenced to a bad-conduct discharge and total forfeitures. The convening authority approved the findings and only so much of the sentence as provides for a bad-conduct discharge and forfeiture of $50.00 per month for six months. We granted review on the following issue:

Whether appellant suffered manifest prejudice when the prosecution, over defense objection, was permitted to distribute copies of charges to members of the court when the Government had no intention of presenting evidence to prove those charges.

The appellant was originally charged with four offenses, including the one of which he was found guilty. The three other offenses alleged, in single specifications, the unlawful possession of marihuana and heroin (Charge I), and the unlawful possession of a hypodermic needle (Charge II). All three of these offenses allegedly occurred on the same date. The Additional Charge for which the guilty finding was returned occurred at a later date.

During a session conducted in accordance with Article 39(a), Code, supra, 10 USC § 839, defense counsel moved to suppress the physical evidence and the testimony concerning such evidence pertaining to Charges I and II, derived from a search of the appellant's barracks room, on the ground that the search was unlawful. After hearing testimony and argument, the military judge granted the motion. When defense counsel attempted to enter a plea to only the Additional Charge, the military judge informed him that all charges and specifications still remained and in-

sisted that the appellant plead to all of them.

Before proceeding to a trial on the merits, defense counsel objected to the Government's handing to the court members copies of Charges (I and II) on which it did not intend to produce any evidence. Defense counsel contended, "By the nature of the charges, the only way the government can prove its case, because of my motion, no longer exists." In denying the objection, the military judge informed counsel:

"The government has no discretion in the matter. These charges were referred to this court for trial by the convening authority and if, because of evidentiary rulings by the judge, the government's unable to prove its case, then certainly a motion for a finding of not guilty will be granted; but the appropriate time to make such a motion is at the conclusion of the government's case."

During the colloquy between the military judge and defense counsel, trial counsel remained mute.

When the members of the court had assembled, trial counsel presented them with copies of the pleadings, and verbally informed the members of the nature of *all* of the charges and specifications. The Government's proof, however, as predicted by defense counsel, related *only* to the Additional Charge. In an out-of-court hearing held after the prosecution had rested, the military judge invited defense counsel to move for a finding of not guilty to Charges I and II and their specifications. After trial counsel announced that the Government did not oppose the motion, it was granted. Thereafter, the military judge informed the court members of his out-of-court action and advised them that they would "not be required to make findings with respect to these charges and specifications, of which the accused has already been found not guilty." Later, when instructing on sentence, he told

**245**

the court that they could not consider for purpose of an appropriate sentence "the offenses the accused has been found not guilty of committing, which he was arraigned upon earlier."

The Court of Military Review, when considering the issue now before us, took the position that while it would have been a simple matter for trial counsel to have requested a recess and to have had the charges withdrawn by the convening authority (paragraph 56a, Manual for Courts-Martial, United States, 1969 (Revised edition)), the appellant was not prejudiced by the court members being informed of all of the charges upon which he had been arraigned. The Court of Military Review expressed the belief that the instructions of the military judge were sufficient to overcome the possibility of prejudice as to both findings and sentence.

The thrust of the appellant's contention is that he was prejudiced by the fact that the court members were made aware from the pleadings of alleged offenses, as to which there was no admissible evidence, and that such action was basically unfair. Counsel in their brief contend that "[w]hile the offenses were, at first, technically, and properly, charged misconduct, once the prosecution had lost its sole evidentiary ground (the fruits of the unlawful search), the offenses became uncharged misconduct, unsupportable by evidence, in fact, if not in law."

Appellate Government counsel aver that the military judge was correct in his ruling that "[t]he government has no discretion in the matter" of distributing complete copies of the charge sheet since, according to paragraph 56a, Manual, supra, only the convening authority has the power to withdraw charges which have been referred to trial. The appellee further argues that assuming, arguendo, that the action complained of may have been erroneous, the appellant was not prejudiced either as to findings or sentence in light of the compelling evidence of guilt and the instructions of the military judge that the members

were not to consider Charges I and II in determining an appropriate sentence.

I

The record of trial reflects that the military judge construed defense counsel's objection to distribution of all of the charges and specifications as a "motion for a finding of not guilty" with reference to Charges I and II. However, as we read the record, defense counsel was requesting a *withdrawal* of these pleadings from consideration by the court members. Since at that time no evidence had been presented before the triers of fact, jeopardy had not yet attached. United States v Wells, 9 USCMA 509, 26 CMR 289 (1958). In a situation where evidence has been presented before the triers of fact, the pertinent charges could indeed be "dismissed . . . on motion of the prosecution for failure of available evidence." Article 44, Code, supra, 10 USC § 844.

Regarding withdrawal of specifications which have been referred to trial, paragraph 56, Manual, supra, provides in pertinent part:

"*a*. . . . Withdrawal is accomplished by the convening authority directing the prosecution to take the necessary action to remove from the consideration of a particular court a specification and, when appropriate, the charge under which it is laid or the entire case. *This action may be taken only when directed by the convening authority, who may give such a direction either on his own initiative or on application made to him.* . . .

"*b*. . . . Normally, less than all of the specifications may not be withdrawn after the trial proceedings have begun except upon a determination of the convening authority that the specifications so withdrawn should be dismissed or for other good cause determined by the convening authority and made a matter of record. *Among the proper grounds upon which a particular specification may be with-*

246

*drawn . . . [is] that the evidence in support thereof is insufficient. . . .*

. . . . . .

"*d. . . .* When a specification is withdrawn after the trial of a case commences, but before the members of the court are aware that it had been referred to trial, the trial counsel should line out and initial the withdrawn specification on the charge sheet, renumber the remaining specifications and charges when appropriate, *and insure that the withdrawn specification is not brought to the attention of the court members.*" [Emphasis supplied.]

These procedural regulations, promulgated by the President, have the force and effect of law. United States v Smith, 13 USCMA 105, 32 CMR 105 (1962).

It is evident from the above that at the time defense counsel entered his objection only the convening authority could have authorized withdrawal of the pertinent pleadings. Cf. United States v Ellsey, 16 USCMA 455, 456, 37 CMR 75 (1966), where we held that trial counsel " 'will not without authority make any substantial change' in the allegations. Manual for Courts-Martial, United States, 1951, paragraph 44*f*(1)." It is equally evident that had Charges I and II and their specifications been withdrawn, the fact that they had once been preferred could not be disclosed to the triers of fact.

The basis for the request to withdraw was valid—the absence of evidence. Defense counsel had informed the military judge that in light of his suppression of the fruits of the search and the testimony pertaining thereto, the Government was without *any* evidence to sustain its charges. Clearly a substantial reason for withdrawal of the pleadings had been presented. Paragraph 56, Manual, supra. The military judge chose to ignore this representation, simply replying, "That's what you think. You don't know?" He made no effort to ascertain from trial counsel whether he did, in fact,

have other evidence to present on the issues.

The military judge "is responsible for the fair and orderly conduct of the proceedings in accordance with law." Paragraph 39*b*(1), Manual, supra. When presented with a clear statement by an officer of the court that the prosecution had no *evidence* to present on the affected charges, it was his duty to further pursue the matter. See paragraph 69, Manual, supra, "MOTIONS TO GRANT APPROPRIATE RELIEF." As the record of trial reflects, a simple inquiry of trial counsel would have demonstrated the correctness of defense counsel's assertion.

The *assertion* by defense counsel that the Government lacked evidence to proceed on Charges I and II was not the only information before the military judge indicating that defense counsel might indeed know whereof he spoke. When the motion to suppress was made defense counsel initially requested the court to bar the evidence from this trial because of a previous judicial determination that this particular search was illegal. By entry of a stipulation of fact, Defense Exhibit A, it was disclosed that one Private Poole was present in the appellant's room when the complained-of search was made. Marihuana was found on Poole. At the latter's trial, defense counsel successfully moved to suppress the marihuana. Based on the principles of *res adjudicata* and collateral estoppel, defense counsel in the case at bar argued that the prior determination that the search of the room was illegal is binding on the Government and should be so recognized by the court. When the military judge denied the motion as not being *res adjudicata*, the defense proceeded to "make the precise same motion that it made in the previous case, the Poole case"—a motion to suppress on the basis of an illegal search and seizure.

We hold that under the circumstances of this case the military judge erred in failing to exercise his discretion by conducting further inquiry

**247**

when presented with the assertion of defense counsel that the Government did not intend to nor could it present any evidence with regard to Charges I and II. His failure to act made it possible for trial counsel to bring before the court members charges for which the Government knew no evidence would be presented. In discussing a similar situation, a United States Coast Guard board of review declared:

> "As a matter of basic fairness in a criminal trial, if a charge preferred against an accused can not be substantiated by competent legal evidence, it should not be brought to the notice of the court which is trying him on other charges. The accused is entitled to be protected against the risk of having a mere accusation influence a determination of guilty. . . . When a prosecutor is aware before the trial begins that he is not going to be able to make out a case on one of the charges but nevertheless arraigns the accused on it, it is just as unfair to the accused as though he had given the members of the court copies of a withdrawn charge." [United States v Bird, 30 CMR 752, 755 (CGBR 1961).]

Cf. United States v Whittington, 36 CMR 691 (ABR 1966); United States v Carroll, 37 CMR 870 (AFBR 1967).

We cannot overlook the responsibility of trial counsel in this matter. He is charged with the duty ■■■ ■ of informing the convening authority of any matter he discovers *while preparing the case* which in his opinion makes it inadvisable to bring the case to trial. Paragraph 44*f*(5), Manual, supra. Certainly lack of evidence is such matter and we perceive no substantial difference between discoveries made during the time of preparation and those determined during a pretrial hearing. As the Court of Military Review noted, trial counsel need only have requested a recess and have presented this matter to the convening authority in order to obviate "any question of impropriety." We will not inquire into his motives, but in our opinion his failure to speak when he knew the truth of defense counsel's assertion can only serve to cast doubt upon the fairness of military justice. Cf. United States v Valencia, 1 USCMA 415, 418, 4 CMR 7 (1952).

II

The question of prejudice to the appellant remains to be decided, for it is clear that the court members should not have been made aware of Charges I and II and their specifications. Paragraph 56*d*, Manual, and United States v Bird, both supra.

In *Bird,* the board of review found no prejudice as to either findings or sentence in light of the fact that the specification alleging larceny, which it held should have been withdrawn from consideration by the court for lack of evidence, was only one of a total of six specifications of larceny originally charged. Bird also was found guilty of the other five.

In *Whittington,* supra, the accused was originally charged with four specifications alleging absence without leave and one of desertion. During trial before the court members, the law officer held as inadmissible in evidence morning reports referring to two of the absence offenses. Although presented with the opportunity to do so, the convening authority declined to withdraw these specifications. Thereafter, the law officer granted a defense motion, subject to objection by any member of the court,[1] for a finding of not guilty as to these two offenses. He declined, however, to declare a mistrial. Prior to findings, the law officer instructed the court:

> " 'I want to caution the court that the fact that the accused was originally charged with two additional specifications, the fact that he has been found not guilty of those specifications removes them entirely

---

[1] The case was tried prior to the effective date of the Military Justice Act of 1968, Public Law 90–632, 90th Congress, 2d Session, 82 Stat 1335.

from the court's consideration, and you are not to utilize them in any way in determining his guilt or innocence of any of the remaining specifications or charges. You are to exclude Specification 2 and Specification 3 of Charge I from all consideration in this case.' " [*Ibid.*, 36 CMR, at page 693.]

In ruling on allegations of error, the board of review declared in *Whittington,* at page 694:

"We find nothing in this record of trial which would lead us to the conclusion that the law officer abused his discretion in denying appellant's motion for a mistrial. This is particularly demonstrated by the court's willingness to accept the law officer's instructions in respect to the motion for a finding of not guilty of Specifications 2 and 3 of Charge I and, certainly, when the entire record is considered including the law officer's clear admonition that these two specifications of Charge I were not to be considered by the court for any purpose whatsoever in reaching its determination of appellant's guilt or innocence, no substantial doubt was raised as to the legality, fairness or impartiality of the trial.

"While we are convinced that the convening authority referred Specifications 2 and 3 of Charge I to trial in good faith we are of the opinion that his refusal to withdraw these charges, when faced with the knowledge that the law officer would, when moved for a finding of not guilty, grant such motion, constituted error. We are uncertain whether, notwithstanding the cautionary instruction given the court set forth above, such error adversely affected the substantial rights of the appellant, particularly in the sentencing area. Accordingly, to purge this record of all possible prejudice, we will reassess the sentence."

As noted above, the appellant in the case at bar was convicted of only one specification of the four originally charged. All of the specifications were similar in that they all related to the misuse of dangerous drugs and, in fact, one of the other three was identical with the lone specification on which evidence had been presented. On the question of guilt or innocence, the military judge confined his instructions to the simple announcement that since he had granted the defense motion "for a finding of not guilty as to Specifications 1 and 2 of Charge I and Charge I and as to the Specification of Charge II and Charge II . . . the court members will not be required to make findings with respect to these charges and specifications, of which the accused has already been found not guilty." He did not, as in *Whittington,* inform the members that they could not consider these pleadings for *any purpose whatsoever in reaching a determination of the appellant's guilt or innocence.* However, even where the military judge fails to give a proper instruction a further inquiry is necessary and that involves whether the lack prejudiced the accused. With regard to the test to be applied, when inadmissible evidence of misconduct has been brought before the court, we said in the early case of United States v Yerger, 1 USCMA 288, 290, 3 CMR 22 (1952):

". . . . If error occurs which could reasonably have had an effect upon the court's finding, the accused is not required to prove, through exploration of the members' mental processes, that it did in fact influence them. Little v United States, 73 F2d 861, 866 (CA10th Cir)."

The record of trial reflects that the Government's evidence with regard to the Additional Charge consisted of the testimony of four witnesses.[2]

Sergeant Brooks, the noncommissioned officer in charge of the barracks, testified that at about 5:30 a.m. on the day in question he entered the charge-of-quarters (CQ) room and observed the appellant, who was alone

---

[2] The court took judicial notice of the regulation which the appellant allegedly violated.

in the room, asleep wtih his head on a desk. The appellant was attired in a fatigue shirt and his sleeves were rolled down. "Approximately 6 to 8 inches from his head there was a needle, syringe and plunger intact, with blood and some other mixture in the syringe." When Brooks tried to awaken the appellant he appeared dazed, his eyes were glassy, and he was unresponsive when asked where the CQ (Specialist Hovis) was at that time. Brooks remained in the room until the appellant got up and left. Brooks followed him to his bed and did not see Hovis until later in the morning.

Hovis testified that he was out of the CQ room, his main duty station, from about 1:00 to 5:30 a.m., sleeping in the dayroom across the hall. He had left the CQ runner, a member of the replacement unit, in charge. Hovis could not remember the runner's name. Hovis had seen the appellant around the billets that evening but not in the dayroom. When Hovis entered the CQ room at about 5:30 a.m., the appellant was asleep with his head on a desk. He did not see a hypodermic needle. Hovis awakened the appellant and sent him to bed. Sergeant Brooks was not in the dayroom at that time. Later Sergeant Brooks showed Hovis the hypodermic needle which Brooks had placed in a drawer. Hovis stated that he did not have a hypodermic needle in the room that night, and he has never seen the appellant with one. Hovis acknowledged that the CQ room was not locked and normally never is.

Second Lieutenant Dunn saw the accused between 7:15 and 7:30 a.m. Dunn was conducting an inspection of the barracks when he found the appellant asleep on his bunk. Phare did not immediately respond to Dunn's order to get up. After about fifteen minutes, he got the appellant up and told the barracks sergeant to take him to a doctor at the dispensary.

Captain O'Donnell, the appellant's commanding officer, saw Phare sometime between 8:00 and 8:30 a.m. He took the accused to the dispensary and was present when the doctor discovered approximately twenty-four puncture marks in the appellant's left arm. O'Donnell stated that to the best of his knowledge, the appellant was not on profile and did not have authorization to use a needle.

After the introduction of a copy of the regulation, allegedly violated per the Additional Charge, the prosecution rested.

Is this evidence so compelling that it can reasonably be said the members of the court were not influenced adversely to the appellant by virtue of their knowledge of the pleadings in Charges I and II? Apparently, the court members were not immediately convinced of guilt for after conferring for some sixteen minutes the court reopened and the following colloquy took place:

"MJ: Has the court reached its findings?

"PRES: The court has not reached its findings. The court would like to know if the CQ runner who was on duty on the night in question can be produced as a witness in this case?

"MJ: He cannot.

"PRES: The members of the court feel that this man is germane to the issue.

"MJ: From the evidence before the court, the only one who could identify the CQ runner has testified that he did not know the individual; he was a casual, and he has since been swept up in the process of moving and what-not. It's been six— well, not six months—since 14 Janurary, but in any event, the answer to your question is this witness is not available.

"PRES: The witness is unknown, then?

"MJ: The witness is unknown and is therefore unavailable. Any further questions?

"PRES: No, sir."

After an additional ten minutes of discussion in closed session, the court returned its verdict of guilty.

The presence of a hypodermic needle near a sleeping individual, *in an easily accessible area over which the individual exercises no dominion or control*, may not be sufficient evidence on which to base a finding of guilty of a charge of unlawful possession of a hypodermic needle. As the court was instructed, "Mere presence in the vicinity of the hypodermic needle or mere knowledge of its physical location does not constitute possession." Since something more obviously was needed, the Government attempted to portray the appellant as a drug user. To attain this goal, the prosecution produced testimony that the syringe contained blood and some other mixture; that the appellant was, when first observed and for about two hours thereafter, in an apparently dazed condition; and that upon physical examination he was found to have some twenty-four puncture marks in his left arm. Trial counsel initially contended before the court that this evidence clearly connected the appellant with the hypodermic needle, "one possibility would be that he had—or a hypodermic needle had been used." In rebuttal, he argued:

> ". . . Is his condition and the hypodermic marks—excuse me, the puncture marks, in his arm, are these things important? Do they really point to anything? Of course, the prosecution says they do. His condition, particularly, as pointing to a recent possible use of a hypodermic needle. And where is that needle? Well, there's a very likely candidate for that needle. . . . The accused."

With the Government's evidence in this posture, we cannot say the evidence in this case is so overwhelming that the unsubstantiated ██ specifications did not influence the court's findings (United States v Yerger, supra), especially since these specifications, all relating to drug use, tended to fill out the prosecution's picture of the appellant as a user of drugs. While prejudice might have been avoided had the military judge instructed the court not to consider Charges I and II and their specifications, for any purpose in determining whether or not the appellant had been proved guilty of the Additional Charge (United States v Whittington, supra), the plain fact is that it was not given.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge QUINN concurs.

DARDEN, Chief Judge (concurring in part and dissenting in part):

I agree with the principal opinion that the military judge should have determined whether the trial counsel had other evidence and that the trial counsel should have acted to have the convening authority withdraw the charges and specifications concerning which he knew he had no evidence other than that the military judge ordered suppressed.

Despite the error, the appellant's dazed condition, the 24 puncture marks in his left arm, and the proximity of the hypodermic needle are enough evidence to convince me the military jury would have found him guilty without regard to its knowledge of related charges that were not prosecuted.

I would affirm the decision of the Court of Military Review.