UNITED STATES, Appellee

v

JOSEPH P. MOHR, Communication Technician Second Class,
U. S. Navy, Appellant

21 USCMA 360, 45 CMR 134

No. 24,354

May 5, 1972

*Captain R. O. Kellam,* JAGC, USN, argued the cause for Appellant, Accused.

*Lieutenant Steven C. Cross,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

QUINN, Judge:

Initially arraigned on sixteen specifications of wrongdoing, the accused stands convicted of one specification of larceny and four specifications of purchasing cigarettes in tax-exempt military stores for other than personal consumption, in violation of a general regulation, contrary to Articles 121 and 92, Uniform Code of Military Justice, 10 USC §§ 921 and 892, respectively. We granted review to consider two claims of error.

In the first assignment of error, the accused contends he was denied "a speedy trial and a speedy review." However, his argument further alleges that his motion to dismiss the charges for denial of a speedy trial was denied by the trial judge on the basis of an erroneous rule of law. Although an enlargement on our grant, we think it appropriate to consider the contention.

- In a motion to dismiss the charges because of denial of a speedy trial, the "prosecution has the burden of establishing that the delay was not unreasonable." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraphs 68 and 215e; United States v Brown, 10 USCMA 498, 28 CMR 64 (1959). Appellate defense counsel contends the trial judge "subtly placed the burden upon the accused to prove the existence of oppressive design." The contention is predicated upon the following comment by the trial judge: "From the evidence that is presented here, I see no indication or design by the com-

mand to delay in order to accumulate charges." The remark concerned charges filed after the original charges for which the accused was placed under pretrial restraint. It impresses us as an indication that the judge was concerned with whether the later charges had been improperly accumulated. See Manual, supra, paragraph 25. It reflects his alertness to the protections accorded the accused by the Manual for Courts-Martial,-not, as the accused contends, a misunderstanding, or misapplication, of the burden of proof in disposition of a motion to dismiss for denial of a speedy trial. There is, therefore, no merit in this aspect of the accused's argument.

Turning to the merits of the motion to dismiss, no useful purpose will be served by summarizing the ■ relevant matters found in the 130 pages of testimony and argument. As alleged by the accused, the period of delay began with the imposition of restriction upon him on October 24, 1968, and ended approximately ten months later. There is some evidence to the effect that the initial restriction was imposed for the accused's own safety, and that he was thankful for the protection accorded him, but assuming the restriction was disciplinary in nature, it does not settle the beginning of the period of the Government's accountability.

Other offenses were committed by the accused subsequent to his restriction. The Government argues that this misconduct by the accused justified deferment of all proceedings on the original charges for the period required to complete the investigation of, and the preparation of formal charges on, the later offenses. Military law encourages the joinder in a single trial of all known offenses, including offenses committed and charged after filing of formal charges for earlier misconduct. Manual, supra, paragraphs 24b, 30f, and 32c. In the event of conviction, the result of such joinder of charges is usually to the accused's advantage in regard to the sentence. United States v Keith, 1 USCMA 442, 4 CMR 34 (1952); cf. United States

v Thomas, 17 USCMA 22, 24–25, 37 CMR 286 (1967). However, from the standpoint of timeliness of prosecution, delay in proceeding to trial on the original charges, because of a desire to join with them later charges, may result in denial of the accused's right to speedy disposition of the original charges. We considered that situation in United States v Mladjen, 19 USCMA 159, 161, 41 CMR 159 (1969). We said there that "each set of charges involves a different time of beginning." In this ■ case, the charges for which the accused was originally restricted, and later confined, have all been dismissed, either at trial or · on review. We need not, therefore, consider the timeliness of the prosecution as to them.

The charges of which the accused stands convicted were filed on May 5, 1969. As indicated earlier, the trial judge had noted that the filing of these charges was not purposefully delayed "to accumulate" charges against the accused. There is ample evidence in the record to support his comment. Absent any such purpose (see Manual, supra, paragraph 25), the date of these charges is the date of the beginning of the period of the Government's accountability for the timeliness of bringing them to trial.

Trial was held on August 27, 1969. Events between that date and August 15 so compellingly demonstrate the reasonableness of delay in that interval as to require immediate exclusion from the period of accountability. On August 15, defense counsel conferred with the trial judge and trial counsel on a date for trial; it was agreed the trial would be held between August 19 and 21. On August 17, trial counsel was involved in an automobile accident and was hospitalized for his injuries. He was released from the hospital on August 20, and returned to duty that day. Although the record does not clearly indicate the fact, it may fairly be inferred that he conferred with defense counsel and the trial judge to set a new date of trial. The record indicates that trial

was rescheduled that day for August 27. Thus, the period of accountability for the offenses of which the accused stands convicted is not ten months, as alleged by the accused, but 100 days, that is, from May 5 to August 15, 1969.

On the day the charges were filed, they were referred to an Article 32 investigating officer. A hearing was held on May 6. On May 22, it was proposed that certain documentary evidence be presented to the investigating officer without formal hearing, but the proposal was rejected by civilian counsel, who had newly-entered the case. A further hearing was held on June 2; at that hearing, the defense requested reopening of the testimony by the Government witnesses for the purpose of additional cross-examination by civilian counsel. It does not appear what action was taken on the request, but it was withdrawn on June 13. Depositions were taken on June 23 and 24. On July 28, 1969, the staff judge advocate submitted his recommendation and advice to the convening authority; two days later, the convening authority referred the charges to trial. On August 14, another deposition was taken of a Government witness. On August 15, there was the conference with defense counsel which resulted in the scheduling of trial between August 19 and August 21.

Considering the necessity to prepare for the various activities reflected in this partial chronology of events and the time required for preparation of the transcripts of the various hearings and depositions, we have no doubt that the interval of time between each activity was not unreasonably long. We are also certain that the whole course of the prosecution was not so slow as to be condemned as unreasonable or oppressive, as a matter of law. We conclude, on the evidence presented to him, that the trial judge did not err in denying the motion to dismiss those offenses of which the accused still stands convicted. United States v Burton, 21 USCMA 112, 44 CMR 166 (1971).

The accused's trial ended on October 6, 1969. The reviewing authority acted on the record on December 21, 1970; and the Court of Military Review promulgated its decision on April 9, 1971. Conceding that appellate review "takes time," the accused contends that the time in this case is so extended as to be unreasonable and presumptively oppressive.

Delay in completion of appellate review is a recurrent and vexatious problem. We have formally confronted the problem in a number of cases, and we have commented on the matter in our 1970 Annual Report to Congress regarding the operation of the Uniform Code of Military Justice. See United States v Davis, 20 USCMA 541, 43 CMR 381 (1971); United States v Richmond, 11 USCMA 142, 28 CMR 366 (1960); Annual Report of the United States Court of Military Appeals and the Judge Advocates General of the Armed Forces and the General Counsel of the Department of Transportation, 1970, pages 11–12. Suffice it to say that, apart from the consequences to the accused in a particular case, unreasonable delay between the charge and its final disposition "contributes to the cancerous growth of disrespect for law." Quinn, "Law and Order: The Effects of Judicial Delay and the Responsibility of Judges," 5 Journal of Beverly Hills Bar Association 33 (September 1971); see also United States v Marion, 404 US 307, 30 L Ed 2d 468, 92 S Ct 455, 469 (1971), concurring opinion.

As it affects a convicted accused, unreasonable delay in completion of appellate review "is not enough to warrant a reversal unless the delay has harmed" him. United States v Davis, supra, page 542. The Government has filed a long statement to explain and justify the time for review which covers only the period from October 6, 1969, to August 11, 1970. We need not evaluate that statement.

The accused was released from all restraint on June 24, 1969; and after his conviction, service of the confinement imposed by the court-martial was

deferred. Several findings of guilty were disapproved in the course of review, and other than a matter we will consider later in the opinion, no error affecting the validity of the remaining findings of guilty and the sentence has been called to our attention or been noted by us. The Court of Military Review has so modified the sentence that the accused will not face confinement, or other apparent disadvantage, on completion of appellate review. Cf. United States v Weber, 20 USCMA 82, 42 CMR 274 (1970); United States v Ervin, 20 USCMA 97, 42 CMR 289 (1970). Unreasonable or not, therefore, the delay in accomplishment of review by the convening authority and the Court of Military Review has not, and will not, prejudice the accused.

We now turn to the accused's second assignment of error which deals with the admission in evidence of three depositions. The depositions were taken in anticipation of the transfer of the witnesses, Dunlap, Schwartz, and Grabiel, from the place of trial in the Republic of the Philippines to the United States for discharge from the Navy. The evidence indicates that all three witnesses were, in fact, discharged before the first scheduled date of trial.

Article 49 of the Uniform Code provides for the admission in evidence of testimony by deposition. Its language as to the conditions for admissibility is not free of ambiguity. See dissenting opinion of Chief Judge Quinn in United States v Sutton, 3 USCMA 220, 11 CMR 220 (1953); United States v Jacoby, 11 USCMA 428, 429, 29 CMR 244 (1960). At issue here is the provision that a properly taken deposition

may be read in evidence in a noncapital case if it appears "that the witness resides or is beyond the . . . Territory . . . in which the court . . . is ordered to sit, or beyond 100 miles from the place of trial." Code, supra, Article 49(d)(1). As applied to persons in the military, who are "always within the jurisdiction of the military court," mileage is not the open sesame to admissibility; besides the requisite distance from the courtroom, it must also appear that the witness is not reasonably available to testify in person. United States v Davis, 19 USCMA 217, 223, 41 CMR 217 (1970).

Neither the Government nor the accused has attempted to identify circumstances of unavailability. See concurring opinion of Judge Darden in United States v Davis, 19 USCMA 217, 224, 41 CMR 217 (1970), and United States v Hodge, 20 USCMA 412, 413, 43 CMR 252 (1971). Instead, they have addressed themselves to whether the requirement of unavailability that is applicable to members of the military also applies to witnesses who are not in the armed forces. Government counsel contend that the rule as to nonmilitary witnesses is, or should be, different from that applied to military personnel. They maintain their position is supported by United States v Ciarletta, 7 USCMA 606, 23 CMR 70 (1957). Appellate defense counsel contends for a rule of uniformity and consistency for both military and nonmilitary witnesses, which they say is a requirement of military due process. They rely on United States v Hodge, supra, and United States v Gaines, 20 USCMA 557, 43 CMR 397 (1971).[1] Our view of

---

[1] In United States v Hodge, 20 USCMA 412, 413, 43 CMR 252 (1971), we made certain assumptions for the purpose of disposition of the appeal. One assumption was that a civilian witness physically located in the United States could be subpoenaed to testify before a court-martial convened in a foreign country. A second assumption was that "because the

Government procured the witness' departure from Vietnam and effected his discharge from the service before the expiration of enlistment, it is prevented from asserting the witness' inability to attend as justification for use of his deposition." Later, in United States v Gaines, 20 USCMA 557, 43 CMR 397 (1971), we listed various circumstances that indicated that a dep-

what took place at the depositions makes it unnecessary to resolve the conflicting contentions.

To a degree unmatched in the civilian community, military law imposes upon the Government the ■ obligation to disclose to the accused prior to trial all matters in its possession or within its knowledge which bear significantly upon his guilt or innocence. See Article 32, Uniform Code of Military Justice, 10 USC § 832; Manual for Courts-Martial, United States, 1969 (Revised edition), paragraphs 33$i$(2), 34$d$ and $e$, 35, 44, 79; United States v Schuller, 5 USCMA 101, 17 CMR 101 (1954); Moyer, "Procedural Rights of the Military Accused: Advantages Over a Civilian Defendant," 22 Maine Law Review 105 (1970). Constitutional limitations on the right of the Government to procure evidence or information from the accused afford him substantial protection against disclosure, in advance of trial, of evidence or procedures he intends to use at trial. The right of nondisclosure in advance of trial does not, however, give the accused the right to repudiate at one stage of the prosecution the consequences of his conduct at an earlier stage. United States v Jones, 7 USCMA 623, 629, 23 CMR 87 (1957); United States v Wolfe, 8 USCMA 247, 250, 24 CMR 57 (1957). In other words, the doctrine of waiver applies to the accused. We have, in fact, recognized applicability of the doctrine in regard to the right to object to the admission of deposition testimony. United States v Gaines, supra, page 560. The record here impels the conclusion that the accused's failure to object to departure and discharge of the witnesses constitutes a waiver of evidence of their unavailability after their discharge.

Dunlap's deposition was taken on August 14. At the outset, he indicated that, as a result of the investigation into his relationships with the accused, he had been retained in the service past the time of his scheduled discharge. He invoked his right to remain silent under Article 31 in regard to cigarette transactions with the accused, and he testified as to the larceny specification only because directed to do so by the Deposition Officer. He indicated he was returning to the United States to be discharged from the service. No objection to his departure or discharge was interposed by either military defense counsel or civilian counsel. The next day, defense counsel agreed on a trial date. There is no evidence they even suggested to trial counsel or the judge that they would require Dunlap's presence at trial or that they would regard his discharge as insufficient proof of his unavailability.

Defense counsel knew Dunlap was a recalcitrant witness for the Government; consequently, they knew, or had good reason to believe, that if discharged, he would not voluntarily return as a witness. Defense counsel also knew that if Dunlap was discharged, he would no longer be amenable to direct military order, but only to subpoena. See Code, supra, Article 47. See also Rule 17, Federal Rules of Criminal Procedure. Considering the shortness of the interval between the date of trial and the probable date of Dunlap's discharge, defense counsel had to know that if they did not take immediate action to stay Dunlap's discharge, he could not return to the Philippines in time for the trial, even if subpoenaed. Delay of the trial proceedings would inevitably result; yet, at this time, the defense was insisting upon an immediate trial. In our opinion, the circumstances obligated the defense to notify the Government, at least before Dunlap's discharge, that it would not regard discharge as proof of Dunlap's unavailability as a witness. Cf. United States v Gaines, su-

---

osition was improperly admitted in evidence. Included in the list was the fact that the witness' departure from Vietnam and discharge from the serv-ice were "effectuated by the Government and for its convenience." *Id.*, at page 559.

pra, page 562; see also United States v Phare, 21 USCMA 244, 45 CMR 18 (1972).

Appellate defense counsel contend that a statement by civilian counsel at the deposition of a witness named Smith, taken on June 23, put the Government on notice that the defense would insist on the actual presence of all the witnesses, including Dunlap. They maintain the statement was "unequivocally plural" and was intended to apply to the deposition of every Government witness. Since Dunlap's deposition was taken on August 14, the connection between his deposition and Smith's appears to be exceedingly tenuous. Assuming, however, that the statement applies to all the depositions in issue, we construe it differently from counsel.

Three witnesses testified before a Deposition Officer on June 23. Schwartz was the second of the witnesses; Smith was the first. Before the questioning of Smith began, civilian counsel objected to the taking of the deposition "because we want a speedy trial." The objection was noted on the record. At the close of Smith's testimony, and before Schwartz was called, the following colloquy ensued:

"IC: If it pleases the Deposition Officer, our original objection to taking of deposition is again imposed as this case has not yet been referred to a trial and we would want the witnesses present at the trial when it convenes.

"DO: Yes, mam. Your objection as I understand it, is that if they had the trial now rather than the deposition they could have the witnesses here, is that correct?

"IC: Yes, sir."

In its opinion, the Court of Military Review found "nothing" in the record to indicate that the accused "wanted" the witnesses to be present at trial. Appellate defense counsel charges the court with "overlook[ing]" the above-quoted remarks, which he construes as a declaration by trial defense counsel that they did not intend to "waive any possible objection" to the admissibility of all depositions. He particularly emphasizes the comment that "we would want the witnesses present [to testify] at the trial." The argument disregards the context of the comment. First, the remark expressly refers back to defense counsel's statement about wanting a speedy trial, which was made at the beginning of the deposition. Secondly, the remark must be considered in connection with the defense effort, starting on May 15, to move the case to early trial.

As noted previously, the defense had filed a demand for a speedy trial. Since more than a month had passed without a trial date, it was natural for counsel to suggest, as she did, that proceeding to trial would be better than taking depositions. Also, there was nothing in Dunlap's testimony or in Schwartz' which was crucial to the defense. Their testimony concerned the larceny charge, which was defended on the theory that the accused was not the thief. Dunlap and Schwartz had stored property in a locked storage room; neither knew anything about the circumstances of the theft of their property from the room. Thus, there was no cogent reason for the defense to prefer their live testimony over their depositions. Viewed in the light of these circumstances, civilian counsel's remark as to the witnesses' presence at trial appears not as a demand that they testify in person, but merely as giving added weight to the on-going effort of the defense to bring the case to trial. Consequently, we agree with the Court of Military Review that nothing in the record indicates that the defense wanted the witnesses to testify personally at trial so that their demeanor as well as their testimony would be subject to the scrutiny of the court members.[2] Cf. United States v Gaines,

---

[2] The same situation exists in regard to Grabiel's deposition. The accused had made a pretrial statement in which he admitted he had Grabiel purchase 21 cartons of cigarettes for him from tax-exempt sources in violation of the

supra, page 560. The quoted comment does not, therefore, militate against our conclusion that the defense waived whatever right it may have had to require evidence of unavailability for trial other than the fact of discharge from the service.

The decision of the United States Navy Court of Military Review is affirmed.

DARDEN, Chief Judge (concurring):

I agree that the appellant has not been deprived of a speedy trial or speedy review.

The principal opinion points out that in a noncapital case prosecution may offer into evidence the deposition of a witness who "resides or is beyond the . . . Territory . . . in which the court . . . is ordered to sit, or beyond 100 miles from the place of trial." Article 49(d)(1), Uniform Code of Military Justice, 10 USC § 849. Reasonable unavailability of the witness is then made an added requirement.

In United States v Davis, 19 USCMA 217, 224, 41 CMR 217 (1970), my concurring opinion expressed my view that a witness's being more than 100 miles from the place of trial is not in itself sufficient evidence of military necessity to depart from the desirable practice of confrontation.

The general court-martial of appellant Mohr began August 27, 1969, at the United States Naval Station, Subic Bay, Philippines. Before that date witnesses Bas, Dunlap, Schwartz, and Grabiel had returned to the continental United States. Regardless of whether a separation of 100 miles is a reasonable showing of necessity, in this instance the witnesses were on another continent, many thousands of miles from the place of trial. In these

circumstances, I have no difficulty in giving effect to the congressional authorization for use of depositions when the witness is beyond the territorial limits of the country in which the trial is being held. See my dissenting opinion in United States v Gaines, 20 USCMA 557, 563, 43 CMR 397 (1971).

DUNCAN, Judge (dissenting):

With regard to the appellant's contention that he was denied a speedy trial, I do not agree with the majority that "the period of accountability for the offenses of which the accused stands convicted is not ten months, as alleged by the accused, but 100 days, that is, from May 5 to August 15, 1969." That holding is based on a determination that the charges for which the appellant was originally restricted, and later confined, have all been dismissed, either at trial or on review. In my opinion, this is a misapplication of our holding in United States v Mladjen, 19 USCMA 159, 41 CMR 159 (1969). Mladjen is distinguishable on its facts.

On October 24–25, 1968, the appellant executed a pretrial statement (Prosecution Exhibit 12) in which he detailed his activities as a black marketeer in Navy ration tax-free cigarettes. Included in the statement is a list of the names (23) of fellow Navy personnel from whom he admittedly purchased cigarettes and the approximate number of cartons obtained from each. Appellant also acknowledged in the statement that he had stolen and sold United States ammunition and that he had unlawfully cohabited with the woman whom he subsequently married. He was placed under restraint prior to trial as follows: barracks restriction, October 24–30, 1968; restriction in lieu of arrest, October 30, 1968—March 31, 1969;

general regulation controlling such purchases. In his deposition, Grabiel testified he had purchased a lesser number of cartons than the accused had admitted. At trial, the accused challenged the admissibility of his confession, but he did not dispute Grabiel's testimony. It may reasonably be inferred that at

the time of Grabiel's deposition, the defense did not expect to challenge Grabiel's credibility at any time in the proceedings. There was, therefore, no reason for the defense to believe that Grabiel's demeanor at trial would be a material factor in the court members' consideration of his testimony.

confinement, March 31—June 24, 1969. Trial began August 27, 1969.

On January 16, 1969, the appellant was informed that he had been charged with black marketing, theft and sale of Government property, and unlawful cohabitation (Articles 92, 121, 108, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 921, 908, and 934, respectively). An Article 32 investigation was convened and completed on January 23, 1969, but the report thereof was not submitted until March 14, 1969. The pretrial investigation was returned on March 18 with oral advice to modify the charges and refer them to a special court-martial. This was done on March 26.[1]

On the following day, an associate of the appellant executed a sworn statement implicating the appellant in a recently discovered theft from the enlisted men's barracks. On May 5, new charges were prepared and referred for pretrial investigation. At this time the original charge of black marketeering was retained but the charge of unlawful cohabitation had been changed to the violation of a lawful general regulation (Article 92, Code, supra) by marrying without the required written permission of the Commander, United States Naval Forces, Philippines. In addition, the appellant was charged with one specification alleging a theft from the barracks (Article 121, Code, supra) and twenty-two specifications each alleging, in conjunction with a named individual, a violation of a lawful general order (Article 92, Code, supra) by the purchase of cartons of cigarettes from United States military tax-exempt sources, for a purpose other than his own consumption. All but one of the individuals named in the separate specifications had been identified by the appellant in his October statement in which he detailed his black-market activities. These other offenses (purchase of cigarettes from tax-exempt sources)

allegedly occurred between March and October 1968.

The Article 32 investigation was reconvened and completed on May 6, 1969. On May 15, defense counsel made a demand for a speedy trial. As noted above, the appellant was released from confinement on June 24.

Prior to referring the corrected and new charges to trial on July 30, the convening authority withdrew nine of the above-mentioned group of twenty-two specifications. At trial, the military judge granted a prosecution motion to dismiss nine more of them. The military judge also granted a defense motion for a finding of not guilty with regard to the original charge of black marketing on the ground of lack of evidence.

The court-martial convicted the accused of a violation of a general regulation by marrying without permission, barracks larceny, and four specifications of violation of a general order by the purchase of tax-free cigarettes for other than his own consumption. Although the court-martial rendered its decision on October 6, 1969, the convening authority did not act on the record until December 21, 1970. The latter reduced the value amount of the barracks larceny, but otherwise approved the findings. He approved the adjudged sentence of dishonorable discharge, total forfeitures, and reduction to the pay grade of E-1, but reduced the confinement at hard labor from three years to one year.

The Court of Military Review set aside and dismissed the conviction for violation of the regulation regarding the marriage and affirmed the other offenses and the sentence, except for the portion relating to confinement. In that regard, it affirmed only the confinement already served by the appellant as of February 20, 1970, on which date service of the remaining confinement had been deferred.

I believe these facts clearly reflect that the appellant was denied the speedy trial guaranteed by Articles 10 and 33, Code, supra, 10 USC §§ 810 and 833, and the Sixth Amendment to the

---

[1] The case was originally set for trial on April 25. This was later changed to April 30 and finally to May 8.

Constitution of the United States. United States v Weisenmuller, 17 USCMA 636, 639, 38 CMR 434 (1968). See also United States v Smith, 17 USCMA 427, 38 CMR 225 (1968); United States v Williams, 16 USCMA 589, 37 CMR 209 (1967). Cf. United States v Keaton, 18 USCMA 500, 40 CMR 212 (1969).

The Government contends that the major portion of the delay can be attributed directly to the appellant. Counsel argue that other offenses committed by the appellant subsequent to his being placed on restriction justified deferment of all proceedings on the original charges. They refer specifically to the barracks larceny and the unauthorized marriage. The latter offense, however, was known by the appellant's command on March 4 (Prosecution Exhibit 1), eighteen days prior to the date on which the original charges were referred to a special court-martial. Only the barracks larceny fits the category of a subsequently committed offense.

Be that as it may, when offenses have already been referred to trial and information is received reflecting the commission of other offenses, trial on the original charges need not be held in abeyance while the new ones are being processed. This is the teaching of United States v Thomas, 17 USCMA 22, 24, 25, 37 CMR 286 (1967). Quite correctly, the Government does not include in this listing of additional offenses, as a cause for delay, the twenty-two specifications reflecting the purchase of tax-free cigarettes from other military personnel. These offenses were acknowledged by the appellant in his October statement and verified in signed statements by the individual sellers on various dates between October 29, 1968, and November 29, 1968.[2] I have been unable to find any explanation in this record for the failure to charge these offenses against the appel-

lant until May 5, 1969, more than five months thereafter. The direct connection between these specifications and the original charge of black marketing was disclosed by the prosecution during argument on the admissibility of the appellant's pretrial confession. Trial counsel contended that while the appellant's *intent* in *purchasing* these cigarettes was not pertinent to the twenty-two specifications, the fact that he purchased such large quantities were evidence corroborative of his admission that he thereafter sold them off base. In light of this connection and since the appellant stands convicted of four of these twenty-two specifications, I believe the majority err in holding that the Government's accountability for the timeliness of bringing these charges to trial to begin on May 5, 1969. Even the Government conceded that its "period of accountability commenced on 24 October 1968."

Article 10, Code, supra, clearly provides that when an accused is placed under restraint *immediate* steps be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him. If held for trial by general court-martial, Article 33 requires that charges, together with the investigation and allied papers, shall be forwarded within eight days, if practicable. If not practicable, a written report explaining the reasons for the delay shall be made. In a motion to dismiss the charges because of a denial of speedy trial, the "prosecution has the burden of establishing that the delay was not unreasonable." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraphs 68*i* and 215*e*; United States v Smith, 17 USCMA 55, 58, 37 CMR 319 (1967).

The appellant was under restriction —restriction in lieu of arrest for eighty-four days (October 24, 1968— January 16, 1969)—before he was

---

[2] Seven of these statements were considered by the investigating officer at the hearing on January 23, 1969. Eleven more were made part of the May 6 hearing record. At trial, only four were admitted in evidence by the military judge.

initially informed of the charges against him, undeniably a clear violation of Article 10. When the charges were finally forwarded to the officer exercising general court-martial jurisdiction on June 17, 1969, the following explanation for delay was given:

"3. In compliance with reference (c), the following explanation is submitted as to why it was not practicable to forward enclosure (1) [investigating officer's report of March 11, 1969] within 8 days following the accused's being placed in confinement, and collaterally, the protracted delay following MOHR's being placed on restriction. Due to to the lenghtly [sic] period involved a chronological development would better present where significant and substantial delays have been caused:

"a. In October 1968, OIC, FICPAC, where the accused was then assigned, requested NISO-Subic to investigate MOHR for possible black market activities and wrongful cohabitation.

"b. 30 October 1968—Accused placed on safekeeping restriction on the basis of MOHR's alleged confession given on 25 October 1968. ONI investigation continued.

"c. 24 December 1968—Initial ONI Investigation Report received by the command. The facts were immediately evaluated and the case referred for pretrial investigation.

"d. December 1968—Final ONI Investigation Report of 26 December 1968 received and submitted to pretrial investigator.

"e. 23 January 1969—Pre-trial investigation convened.

"f. 17 February 1969—Pretrial investigating officer departed on TAD.

"g. 10 March 1969—Pre-trial investigating officer returned.

"h. 11 March 1969—Investigation report signed.

"i. 14 March 1969—Investigation Report submitted without formal endorsement to Staff Judge Advocate Office, Subic Bay.

"j. 18 March 1969—Investigation Report returned to command with verbal instruction to modify charges and reference for trial by special court-martial. New charges preferred and referred to a special court-martial on 26 March 1969.

"k. 31 March 1969—Command received request for the appointment of certified counsel. MOHR ordered into safekeeping confinement when he was implicated in an alleged theft in the enlisted men's barracks and plans to raid the Station Armory contained in ONI Investigation Report of 27 March 1969, which investigation was predicated upon a request by the Executive Officer on 24 February 1969.

"l. 1 April 1969—Request for certified counsel forwarded to COM-NAVBASE, Subic Bay.

"m. 4 April 1969—Initial ONI Investigation Report of 27 March 1969, concerning the break-in and theft of the barracks locker received by the command.

"n. 30 April 1969—Final ONI Investigation Report of 28 April 1969, relative to theft in the barracks locker received by command.

"o. 5 May 1969—Additional charges preferred and referred for pretrial investigation.

"p. 6 May 1969—Pre-trial Investigation convened by mutual agreement between Defense Counsel, Pretrial Investigator and Counsel for the Government.

"q. 9 May 1969—Deposition hearing convened to preserve testimony of three material witnesses departing this area.

"r. 20 May 1969—Another deposition hearing convened.

"s. 2 June 1969—Reinvestigation convened.

"4. The delay beyond this time in forwarding enclosure (2) [investigating officer's report of June 4,

1969], was caused in the preparation of the relatively lengthly [sic] record of proceedings, preparation of the investigating officer's report and preparation of the records of the deposition hearing."

This is hardly the *reasonable* explanation contemplated by the Manual and the opinions of this Court for a delay of almost eight months (236 days). The explanation discloses what happened but not *why* it happened.

The original charges were referred for a pretrial investigation (Article 32, Code, supra, 10 USC § 832) on December 24, 1968, yet that investigation was not convened until January 23, 1969, despite the fact that trial by general court-martial was contemplated. (See reference to paragraph 34e, Manual for Courts-Martial, United States, 1951, in the letter of referral.) A one-day hearing was conducted but the nineteen-page report of testimony taken was not submitted until March 14, 1969.[3] The attachments to the report had all been prepared in September, October, and November 1968, and all but one relate to the appellant's purchase of cigarettes from fellow seamen. Further delay until May 5, 1969, occurred when the command on April 25 reversed its determination of March 26 that a special court-martial was appropriate, to await the results of investigation of new and additional charges. The pretrial investigation of May 6 was sixty-two pages in length. Attached thereto are a number of statements taken in October and November 1968, also concerning purchase of cigarettes by the appellant and six taken in March 1969, relative to the barracks larceny. A copy of the appellant's marriage contract is also attached. The hearing of June 2 is only three pages in length. The previously made demand for speedy trial was iterated at this time.

The appellant was suspected of the barracks larceny on March 27 and was ordered into confinement on March 31 for "safekeeping." Charges concerning this offense, however, were not preferred until May 5 despite the fact that all of the witnesses who connected the appellant to the barracks larceny and who subsequently testified at the one-day hearing on May 6,[4] had already given statements to Navy investigators on March 26 and 27. Others testified to their loss of property. On May 15, defense counsel made a demand for speedy trial. The report of investigation was prepared on June 4 but not forwarded to the convening authority until June 17. The only explanation for the thirteen-day delay was the time needed for "preparation of the record of the deposition hearings" since "the relatively lengthy record of proceedings" and the "preparation of the investigating officer's report" had already been completed on June 4. The depositions, however, were not necessary to the pretrial investigation and were occasioned by lengthy and unexplained delay on the part of the Government in bringing this matter to trial.

The deposition hearings of May 9 and 20 were for the benefit of the Government in order to preserve testimony of soon-to-depart servicemen. With one exception, a witness at the appellant's wedding, all of the deponents testified relative to their sale of cigarettes to the appellant in October and November 1968.

While the commanding officer's report went forward, as indicated, on June 17, the Government found it

---

[3] The pretrial investigating officer's temporary duty assignment on February 17, 1969, was to Honolulu for four days. Thereafter, he went on leave in the United States until March 10, 1969.

[4] It was on this date that the appellant was first made aware of the new charges, according to the report of proceedings. As late as April 25, when a decision was made to refer the matter to another Article 32 investigation, the appellant expected to be tried by special court-martial on the original charges.

necessary to take additional depositions on June 12 and 24 and on August 14, 1969. Three deponents again testified as to the barracks larceny but the majority gave information on cigarette sales to the appellant, some seven to eight months previously. On June 12 and 24, defense counsel objected to the deposition procedure on the ground that had the Government not delayed the judicial process, these witnesses would have been available for cross-examination before the triers of fact. See United States v Davis, 19 USCMA 217, 220, 41 CMR 217 (1970).

The staff judge advocate did not prepare his pretrial advice for the convening authority until July 28—forty-one days later.[5] But even then the Government was not ready to go to trial for on July 11 the witness who had initially implicated the appellant in the barracks larceny and who was admittedly an accomplice in that offense, advised trial counsel that he would claim Article 31 with respect to any questions asked of him on the witness stand. Trial counsel's request for a grant of immunity for this witness was not signed until August 14.

In selecting beginning dates both for the regulation violation charges and the larceny, contrary to the concession of the Government and the facts of this case, in my judgment the majority is incorrect.

The Government has fallen far short of sustaining its "burden of establishing that the delay was not unreasonable." Paragraphs 68*i* and 215*e*, Manual, supra. The delay in the pretrial processing of this case from the time of the appellant's restriction on October 24, 1968, to the date of trial August 27, 1969, more than ten months, a delay wholly attributable to the Government, is, I believe, a violation of the accused's statutory and constitutional rights. United States v Weisenmuller, supra; United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964). Cf. Rule 48(b), Federal Rules of Criminal Procedure; United States v Marion, 404 US 307, 30 L Ed 2d 468, 92 S Ct 455 (1971), footnote 11. As this Court stated in United States v Ervin, 20 USCMA 97, 98, 42 CMR 289 (1970):

"When the Government has control of the procedures required to effect timely disposition of criminal charges, neither its good faith nor 'inadvertent' negligence can excuse inordinate delay. United States v Parish, 17 USCMA 411, 38 CMR 209 (1968); see also Smith v Hooey, 393 US 374, 21 L Ed 2d 607, 89 S Ct 575 (1969); Gross v United States, 408 F 2d 1297 (CA DC Cir) (1969)."

I would reverse the decision of the Court of Military Review and order the charges and specifications dismissed.

---

[5] The pretrial advice was not complicated and is only twelve pages in length. Five of those pages consisted of a listing of the various charges and specifications, copied from the charge sheet, and five more summarized the expected testimony of the various witnesses as evidenced by their statements.