UNITED STATES

v.

**Airman First Class Bret K. SIRLES, FR 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 United States Air Force.**

**ACM 22643.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 30 Aug. 1979.

Decided 26 June 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Major Robert T. Mounts.

Before HERMAN, ARROWOOD and MILES, Appellate Military Judges.

## DECISION

MILES, Judge:

Consistent with his pleas, the accused was convicted of wrongful appropriation and four larcenies in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921.[1] The approved sentence extends to a bad conduct discharge, confinement at hard labor for sixteen months, total forfeitures and reduction to airman basic.

The accused contends he was denied his right to a speedy trial by the government's failure to comply with the time standards established in Air Force Manual 111–1, Military Justice Guide, 2 July 1973, C–2, 8 October 1976, paragraph 1–3. We disagree.

Following the theft of a motorcycle at MacDill Air Force Base, Florida, the security police, on 28 June 1978, began an investigation into the accused's activities. This investigation expanded to include various other larcenies as well as a variety of other offenses of which the accused was suspected. Despite initial denials, the accused furnished a statement to the security police on 5 November 1978, admitting various thefts from June through September 1978. At that time, he was relieved of his normal duties in munitions maintenance and assigned to the squadron orderly room. A pending administrative discharge action against him was withdrawn.

The final security police investigation report of some 187 pages was completed on 21 February 1979. On 15 April 1979, the accused entered a hospital. He was released on 30 April 1979. On 1 May 1979, charges of larceny, housebreaking and solicitation to commit larceny were preferred and an Article 32 investigating officer was appointed. Although the investigation was delayed by the accused's request for a witness, ultimately, seven specifications of larceny and one charge of solicitation to commit larceny were referred to general court-martial on 27 July 1979. He was tried and sentenced on 30 August 1979. After a delay partly requested by the accused, the convening authority approved the findings and sentence on 5 December 1979.

Prior to trial the accused was not restricted or confined. There was no allegation or evidence that the accused was prejudiced in the defense of the case by the delay or that his right to a fair trial was impaired. There is no indication the accused demanded prompt trial of the charges before trial.

At trial, the accused moved to dismiss the charges based upon the denial of his right to a speedy trial as allegedly embodied in AFM 111–1, *supra*. As pointed out by the defense, the AFM 111–1 time goals, within which cases are normally processed, were exceeded at numerous points in the processing of this case. The defense contention at trial and before this Court is that the established time goals were intended to benefit and confer rights on accused persons, and

---

1. He was acquitted of solicitation of another to commit larceny, and two other specifications of larceny were withdrawn by the convening authority.

since they were exceeded, the accused was entitled to dismissal of the charges.[2]

■ The right to a speedy trial is an essential constitutional right, and when the accused asserts a violation of this right, the prosecution has the burden of establishing that the delay was not unreasonable. *United States v. Mohr*, 21 U.S.C.M.A. 360, 45 C.M.R. 134 (1972). However, to prevail on a motion to dismiss, the accused must normally establish that he was somehow prejudiced by the delay if he is not restricted or confined prior to trial. *United States v. Rachels*, 6 M.J. 232 (C.M.A.1979).

■ The right to a speedy trial has been implemented in a variety of ways within the military justice system.[3] Commenting on AFM 111–1, *supra*, the United States Court of Military Appeals noted:

The declared purpose of the Air Force Manual is to implement the general law on prompt disposition of a court-martial matter. To that end, it propounds procedures that are to be accomplished within a period of time which could be less than that sanctioned by statute and case law.

.     .     .     .     .

Here, the Air Force Manual prescribes no general or special sanction. As a result, the remedy must be left to the discretion of the trial judge. As the judge in *Wingard* remarked, not every departure from a provision of the Manual justified dismissal of the charges.

*United States v. Dettinger*, 7 M.J. 216, 223, 224 (C.M.A.1979).

At the same time, the Court of Military Appeals also recognized that on the same facts, a different judge could come to a different conclusion as to the reasonableness of the delay, and as to the corrective action required. That decision simply recognized the power and discretion of trial judges to take actions appropriate in their

view for asserted violations of time standards. It does not prescribe the process to determine violations, or dictate a particular result from a violation. Most importantly, the language in AFM 111–1 relied upon by the defense, and construed by the Court in *Dettinger*, was modified prior to all of the offenses, save one, involved here. On 30 June 1978, AFM 111–1, *supra*, paragraph 1–3a(3) was revised to read:

There is no legal or regulatory requirement that the goals be met in every case or with respect to any particular event among the milestones used for measurement. No rights or benefits are created for any party to a court-martial solely because the processing time goals are not met in any case or with respect to any stage of the proceedings. Likewise, no penalty or limitation is incurred as a result of failure to meet the goals in any individual case so long as controlling principles otherwise imposed by law are not violated.

The new language explicitly rejects any interpretation of AFM 111–1 conferring rights or benefits on any individual accused because of asserted failures to meet the time goals discussed there. Indeed the term, "standard", used in AFM 111–1 and referred to in *Dettinger*, has been replaced with the new term, "goals." Giving effect to this language, we hold that the time goals, as presently worded, in AFM 111–1 create no specific rights in an accused if the goals are not met. However, even if we applied AFM 111–1, as construed in *Dettinger*, we find no practical difference nor do we find any basis for concluding that the delay compelled dismissal.

■ In this case, the delay resulted from the need to investigate a large number of allegations of wrongdoing against the accused, including several alleged offenses

---

**2.** As pointed out in *United States v. Russo*, 1 M.J. 134, 135 (C.M.A.1975), "a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests." *United States ex rel. Accardi*

*v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

**3.** See Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810; *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); *United States v. Banks*, 7 M.J. 92 (C.M.A.1979).

which were not pursued.[4] The government has an obligation to investigate all potential offenses so that they are disposed of in a single prosecution. Manual for Courts-Martial, 1969 (Rev.), paragraphs 24*b*, 30*g*, and 32*c*; *United States v. Mohr, supra.* Other delay resulted from the recovery of the stolen property from sites to which it had been moved by the accused. Once charges were preferred, the case moved more expeditiously. It is not asserted that the government delayed out of improper motives, or to oppress the accused or deny him a fair trial.

Under all the circumstances of this case, we further hold the delays, although extensive, were not unreasonable so as to deny the accused his right to a speedy trial. *United States v. Mohr, supra.* Moreover, accused has not been prejudiced by the delay and hence is not entitled to dismissal. *United States v. Rachels, supra.*

■ Appellate defense counsel also claim that accused's plea to theft of a 1972 Javelin automobile was improvident because accused indicated he wouldn't pay $1,500.00 for the car, the value alleged. We find this assignment of error to be without merit. Accused agreed that the appraised value of the car was $1,500.00. What an accused is personally willing to pay for a stolen article is not a relevant measure of value or an indication of an improvident plea.

■ Appellate defense counsel also ask the court not to approve a sentence which includes confinement at hard labor in view of the pretrial delay. Numerous persons who know the accused well recommend that confinement not be approved. In our view, however, accused already has received considerable leniency. The offenses of which the accused was convicted, multiple larcenies from fellow airmen and wrongful appropriation of government property, fully merit the punishment. We see no reason to

disturb this sentence. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HERMAN, Senior Judge and ARROWOOD, Judge, concur.

---

4. The timeliness of prosecution of charges which have been earlier dismissed or withdrawn need not be considered on appellate review. *United States v. Mohr*, 21 U.S.C.M.A. 360, 45 C.M.R. 134 (1972).