Ronald M. DETTINGER, Sergeant U. S. Air Force, Petitioner,

v.

UNITED STATES, Respondent.

Thomas C. WINGARD, Airman Basic, U. S. Air Force, Petitioner,

v.

UNITED STATES, Respondent.

Miscellaneous Docket No. 78–74.
CMR No. 78–3.
Miscellaneous Docket No. 78–75.
CMR No. 78–4.

U. S. Court of Military Appeals.

Aug. 13, 1979.

For Petitioners: *Captain Wade B. Morrison* (argued); *Colonel B. Ellis Phillips* (on brief).

For Respondent: *Captain Robert T. Mounts* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

For Amicus Curiae: *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major David McNeil, Captain Paul W. Jacobson* (on brief).

Opinion of the Court

COOK, Judge:

These proceedings raise important questions as to the right of the Government to obtain relief from an alleged unlawful and arbitrary ruling by a trial judge that pur-

portedly frustrates the Government's enforcement of the military criminal law.

In each instance,[1] on defense motion before entry of plea, the trial judge dismissed charges against the petitioner that had been referred to a general court-martial for trial.[2] Thereafter, by Petitions for Writ of Mandamus, the Government applied to the Air Force Court of Military Review for relief from the trial rulings. That Court held the rulings amounted to a "usurpation of power" on the part of the respective judges, and each ruling was set aside. 6 M.J. 505, 512 (A.F.C.M.R.1978). The petitioners now ask for reversal of the decision of the Court of Military Review. The questions presented are:[3]

1. WHETHER THE AIR FORCE COURT OF MILITARY REVIEW HAS JURISDICTION TO GRANT EXTRAORDINARY RELIEF TO THE GOVERNMENT.
2. WHETHER EXTRAORDINARY RELIEF WAS APPROPRIATE.

I. *Differences Between Appellate Review and An Extraordinary Proceeding*

■ At the outset, it is important to stress what these cases are not: they are not appeals from a trial order dismissing the charges. The relief obtainable in an extraordinary proceeding may lead to the same result obtainable by appeal from an action or decision in the course of a case but the bases for initiation of each proceeding are different and the standards that govern the award of relief are different. *See Henderson v. Wondolowski,* 21 U.S.C.M.A. 63, 44 C.M.R. 117 (1971); *United States v. Bevilacqua,* 18 U.S.C.M.A. 10, 39 C.M.R. 10 (1968). As the United States Supreme Court said in *Will v. United States,* 389 U.S.

1. Dettinger's court convened at RAF Lakenheath, Suffolk, England. Wingard's court convened at Ramstein Air Base, Germany.

2. Later, each judge denied an application by the convening authority for reconsideration. *See* Article 62(a), Uniform Code of Military Justice, 10 U.S.C. § 862(a).

3. Before this Court's grant of Wingard's petition, the Government moved to dismiss for mootness of the issues because Wingard's previous conviction on other charges had become final, and an appropriate commander had directed that the charges involved in this proceeding be withdrawn and dismissed. We denied that motion. *See United States v. Werthman,* 5 U.S.C.M.A. 440, 18 C.M.R. 64 (1955).

90, 104, 88 S.Ct. 269, 278, 19 L.Ed.2d 305 (1967):

> Mandamus . . . does not "run the gauntlet of reversible errors." . . . Its office is not to "control the decision of the trial court," but . . . to confine . . . [it] to the sphere of its discretionary power.

A trial judge's order dismissing a charge, although not amounting to a finding of not guilty, cannot be reviewed for legal correctness by appeal. Article 62(a), Uniform Code of Military Justice, 10 U.S.C. § 862(a); *United States v. Ware,* 1 M.J. 282 (C.M.A.1976).[4] Thus, the Government could not appeal to the Court of Military Review to review the rulings. However, action on a court-martial matter at the trial level that is not subject to appellate review can, nonetheless, be challenged in an appellate forum by a proceeding for extraordinary relief. In *Fleiner v. Koch,* 19 U.S.C.M.A. 630 (1969), for example, this Court granted a petition for extraordinary relief to prohibit trial of the petitioner by court-martial for an offense that could not constitutionally be tried by a military court.

As early as the third year of operation of the Uniform Code of Military Justice, this Court alluded to the separateness of an extraordinary proceeding from a direct appeal and the attainment of relief by way of the former proceeding when the latter was not available. *United States v. Best,* 4 U.S. C.M.A. 581, 584, 16 C.M.R. 155, 158 (1954).

Over the years, the Court considered many petitions for extraordinary relief in instances when the regular appeal process was not open to the petitioners. Although it has been said, on the one hand, that the Court has been unnecessarily "restrictive,"[5] and, on the other hand, that it may have overstated the scope of the extraordinary relief that can be accorded in the military,[6] the Court has never wavered from the century-old declaration by the Supreme Court that:

> [A] superior judicial tribunal . . . [can] require "inferior courts and magistrates to do that justice which they are in duty and by virtue of their office bound to do." [7]

## II. The Authority of a Court of Military Review to Grant Extraordinary Relief

The power of a superior judicial tribunal to grant extraordinary relief from an order or judgment of a subordinate tribunal has, in the federal judicial system, generally been predicated upon the All Writs Act, 28 U.S.C. § 1651(a). The Act authorizes "all courts established by . . . Congress" to issue "writs necessary or appropriate in aid of their respective jurisdictions." As this Court has drawn heavily upon the civilian precedents for guidance, the All Writs Act has been the keystone of the military cases on the subject. *See McPhail v. United States,* 1 M.J. 457, 462 (C.M.A.1976).

---

4. The court-martial convening authority can request reconsideration of the ruling, but the trial judge is not bound to accede to the contrary opinion of the convening authority as he must accede to that of an appellate court. *See* n. 2, *supra.*

5. Wacker, *The "Unreveiwable" Court-Martial Conviction: Supervisory Relief Under The All Writs Act From The United States Court Of Military Appeals,* 10 Harv.Civ.Rights-Civ.Lib.L. Rev. 33, 56 (1975).

6. In *Noyd v. Bond,* 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 1883 n. 7, 23 L.Ed.2d 631 (1969), the Court said:

> [W]e do not believe that there can be any doubt as to the power of the Court of Military Appeals to issue an emergency writ of habeas corpus in cases, like the present one, which may ultimately be reviewed by that

court. A different question would, of course, arise in a case which the Court of Military Appeals is not authorized to review under the governing statutes. *Cf. United States v. Bevilacqua,* 18 U.S.C.M.A. 10, 39 C.M.R. 10 (1968).

But compare the Court's earlier reference to *Bevilacqua* in *United States v. Augenblick,* 393 U.S. 348, 350, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) and the later implication in *Parisi v. Davidson,* 405 U.S. 34, 44, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972), that the *Noyd* caution was not intended to narrow *Bevilacqua's* view of the range of this Court's extraordinary relief power.

7. *Virginia v. Rives,* 100 U.S. 313, 323, 25 L.Ed. 667 (1880), cited in *McPhail v. United States,* 1 M.J. 457, 462 (C.M.A.1976).

Petitioners contend that the Court of Military Review provided for by Article 66, UCMJ, 10 U.S.C. § 866, is not a court "established by . . . Congress" within the meaning of the All Writs Act. The Government disputes that view of the Article, which provides that "[e]ach Judge Advocate General shall establish a Court of Military Review" to review specified categories of cases and other cases not within the enumerated classes (*see* Article 69, UCMJ, 10 U.S.C. § 869) that may be referred to the court by the Judge Advocate General. This Court first commented on the writ authority of a Court of Military Review eight years ago in *Henderson v. Wondolowski, supra.* Noting that prior to petitioner's application to this Court, the Army Court had denied his application for mandamus to the trial court, we reserved opinion "respecting the applicability" of the All Writs Act to Courts of Military Review. *Id.* at 64 n. 1, 44 C.M.R. at 118. Since then we have taken a number of actions indicative of a conviction that those courts have extraordinary writ authority.

Most prominent of the actions we have taken on the subject since *Henderson* are our decision in *Kelly v. United States,* 1 M.J. 172 (C.M.A.1975) and the adoption of a new rule of practice in this Court in 1977. In *Kelly,* we remanded petitioner's application for extraordinary relief "to the . . Army Court of Military Review . . . to exercise its extraordinary writ authority." [8] *Id.* at 174. New Rule 15(d) of the Court's Rules of Practice and Procedure governs an appeal "from an adverse decision by a Court of Military Review on a petition for extraordinary relief." Notwithstanding what the Court has done, petitioners' counsel contend that the Court has never examined the issue on its merits.

■ Arguments as to the extraordinary writ authority of a Court of Military Review are in conflict. They were canvassed extensively by the Army Court of Military Review, sitting *en banc,* in *United States v. Draughon,* 42 C.M.R. 447 (1970), and by the Coast Guard Court of Military Review in *Combest v. Bender,* 43 C.M.R. 899 (1971).

The courts reached opposite conclusions. The Army Court decided it possessed extraordinary writ authority; the Coast Guard Court said it did not. We need not scrutinize each circumstance perceived by the Courts of Military Review to be pertinent to the issue. Two circumstances weigh so heavily as to impel us to conclude that a Court of Military Review is empowered to provide extraordinary relief.

#### A. *The Court of Military Review and the All Writs Act*

■ Primary consideration must be given to Article 66 of the Uniform Code which provides for a Court of Military Review as an appellate tribunal to review courts-martial for each military service. The material language is that "[e]ach Judge Advocate General shall establish a Court of Military Review." Petitioners' counsel compare this language with that of Article 67, this Court's organic act, which reads: "There is a United States Court of Military Appeals established under article I of the Constitution of the United States." Article 67(a)(1), UCMJ, 10 U.S.C. § 867(a)(1). The comparison they maintain, leads irresistibly to the conclusion that Congress created this Court, but the Court of Military Review for each service is the creation of the Judge Advocate General of that service. Article 66, however, vests no discretion in a Judge Advocate General to decide for himself whether to establish a Court of Military Review; he must do so. Congress prescribed appellate functions for the court, and directed the Judge Advocate General to "establish" the court to carry out those functions. Congress elected to act through the Judge Advocate General, but it conceived the Court of Military Review and it conferred upon it the judicial power it determined the court should have. A Court of Military Review, therefore, is unmistakably a court created by Congress.

#### B. *The Court of Military Review as an Appellate Authority*

The role of a Court of Military Review in the military justice system also supports the

8. We took similar action in February 1978 in *Ward v. Carey,* 4 M.J. 298. (N.C.M.R.)

conclusion that its jurisdiction can be invoked by proceedings different from direct appeal from a trial ruling. The court below remarked that the Court of Military Review of each service is the "highest" tribunal in that service's courts-martial system. An appellate tribunal of that sort, said the court, has judicial authority over the actions of trial judges in cases that may potentially reach the appellate court. We agree. Without stopping to define the limits of such independent proceedings, we have no doubt that, as the highest tribunal in each service, a Court of Military Review can "confine an inferior court [within its system] to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Ass'n.*[9] See also *McPhail v. United States, supra* at 461.

### III. *The Government's Right to Extraordinary Relief*

■ Moving from their general attack on the authority of a Court of Military Review to consider an application for extraordinary relief, petitioners contend that as the court has no power to "hear appeals" by the Government, it necessarily has "no . . power to hear [Government] petitions for extraordinary relief."[10] They say that our summary order in *United States v. Ethridge*, 3 M.J. 204 (C.M.A.1977), is "dispositive of the issues." The published report of the order is unenlightening, but the following extract from the memorandum that preceded the decretal provisions is:

> On consideration of the Petition for Extraordinary Relief filed by the United States for review by this Court of the ruling of the military judge in respondent's special court-martial which granted a defense motion to dismiss the charge and specifications for lack of jurisdiction

. . . it appears that this Court is presently without jurisdiction to entertain a request by the Government for review of an adverse ruling by the military judge in a court-martial proceeding. *See United States v. Ware*, [1 M.J. 282 (C.M.A.] 1976), and *United States v. Rowel*, [1 M.J. 289 (C.M.A.] 1976) (concurring opinion).

Although the Government's petition was titled Petition for Extraordinary Relief, the text predicated "jurisdiction" in this Court upon 18 U.S.C. § 3731. That section of the United States Code is titled "Appeal by United States"; it authorizes appeal directly to the Supreme Court of the United States or to a Court of Appeals, depending upon the matter at issue. The petitioner further asserted that an "appeal" from the trial judge's ruling had been "ordered," and the matter was "ripe for appeal." The matter at issue was whether the accused was subject to trial by court-martial.

At trial, the accused had moved to dismiss the charges for lack of "jurisdiction" over his person resulting from "recruiter misconduct." He presented substantial evidence to support his position. During final argument on the motion, counsel and the trial judge stressed that the crucial question was not the law, but the facts. The judge expressly indicated he knew, and had read, one of the leading cases "50 times at least." He admonished counsel to "argue the facts." Defense counsel offered one version of the facts; the Government had another, which trial counsel contended was "at least, as viable . . . as the [one the] Accused has presented."

Substantively, the Government's petition in *Ethridge* asked review of the factual correctness of the judge's ruling. That is

9. 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943).

10. In a recent law review article, I suggested that, while the Government cannot directly appeal an adverse ruling by a trial judge dismissing a charge on a ground not amounting to a finding of not guilty, "it may be open to . . . [it] to challenge the judge's ruling in a collateral proceeding." Cook, *Courts-Martial: The*

*Third System in American Criminal Law,* So.Ill. L.J. 1, 28 (1978). Counsel for both sides have referred to the article in their briefs, but no one has requested that I recuse myself because of it. I do not regard the comment as disqualifying. *See Laird v. Tatum,* 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (Memorandum of Mr. Justice Rehnquist).

the essence of an appeal.[11] The Court's reference to *United States v. Ware, supra*, and the concurring opinion of the Chief Judge in *United States v. Rowel*, 1 M.J. 289, 291 (C.M.A.1976), both of which dealt with the absence of statutory authority for an appeal by the Government, indicated that we understood the Government's petition as a substitute for an appeal. As the Uniform Code gives the Government no right to appeal, the Court correctly noted it was "presently without jurisdiction to entertain a request by the Government for *review* of an adverse ruling by the military judge in a court-martial proceeding." (Emphasis added.) Nothing said or implied in the *Ethridge* order can reasonably be construed to deny the Government the right to extraordinary relief when warranted, notwithstanding it has no right to appeal.

Fortified by many cases [12] and the analyses of several commentators,[13] government counsel maintain that, independent of the All Writs Act, and in the public interest, a higher tribunal in a tier system of courts, such as that in the military, possesses " 'inherent' " power to issue a supervisory writ to an inferior tribunal. They note that the power has been exercised on application of the Government in criminal cases, even though the Government has no right to appeal from the trial ruling. A respected text on federal practice, however, suggests that application of the supervisory writ is more limited than as posited by the Government. It cautions that when "it is clear that" a positive "statutory policy against appellate review" of a particular final judgment exists, as distinguished from a gap or "lacuna" in the "scope and coverage of the jurisdictional statutes," the higher court "should" observe the policy. 9 Moore's Federal Practice ¶ 110.26 at 285 (1970). *See also Stewart v. Stevens*, 5 M.J. 220 (C.M.A. 1978) (Cook, J., concurring).

It is indeed true, as petitioners contend, that the Government cannot appeal a trial judge's dismissal of charges on a ground not amounting to a finding of not guilty. But that was not always so. At one time, this Court had construed Article 62(a) of the Uniform Code to allow the Government a review "like 18 U.S.C. § 3731, which authorizes an appeal in a criminal case by the Government." *United States v. Boehm*, 17 U.S.C.M.A. 530, 532, 38 C.M.R. 328, 330 (1968). Later, the Court reexamined the Article and concluded that it did not authorize an appeal, which could result in reversal of the trial action, but merely permitted a request for reconsideration of the matter by the trial judge. *United States v. Ware, supra*. *Ware* thus left the Government "with no means of appeal from an adverse ruling of the trial judge" dismissing charges referred to trial. *United States v. Rowel, supra* at 291 (Fletcher, C. J., concurring). The Chief Judge further observed that the resultant "void" was "unhealthy from a judicial administration standpoint." The perceived ambiguity of purpose as regards Article 62 suggests Congress did not intend that a trial judge's dismissal of charges be insulated from all judicial scrutiny. The suggestion is strengthened by the fact that Congress differentiated between a dismissal of charges amounting to a finding of not guilty, which accords an accused the constitutional protection against double jeopardy, and other dismissals. We conclude, therefore, that the Uniform Code discloses no legislative purpose to forbid the military appellate courts from considering an appli-

---

11. *See United States v. Wilson*, 6 M.J. 214, 215 (C.M.A.1979); *United States v. Brown*, 3 M.J. 402 (C.M.A.1977); *see also United States v. Nargi*, 2 M.J. 96 (C.M.A.1977).

12. Illustrative are: *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *United States v. Lasker*, 481 F.2d 229 (2d Cir. 1973), cert. denied, 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974); *United States v. Dooling*, 406 F.2d 192 (2d Cir. 1969), cert. denied sub nom. *Persico v. United States*, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); *United States v. Igoe*, 331 F.2d 766 (7th Cir. 1964), cert. denied, 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961 (1965).

13. Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv.L.Rev. 595, 602–624 (1973); Wacker, *supra* (n. 5) at 68–72. See also Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure*: Jurisdiction §§ 3923–3936.

cation for extraordinary relief from a trial judge's action only because the petitioner is the Government.

Related to, but different from, Moore's caution, is the implication arising "from the cumulative thrust of four particular passages in the opinion" of the Supreme Court in *Will v. United States, supra,* that, in a criminal case, the absence of a right to appeal by the Government restricts the scope of the extraordinary relief available to it. Note, *Supervisory and Advisory Mandamus Under the All Writs Act,* 86 Harv.L. Rev. 595, 623 n. 112 (1973). The Note makes a searching examination of the implication and concludes that "government rights to appeal simply have no place in mandamus doctrine." *Id.* at 628. However, in referring to *Will v. United States, supra,* a leading encyclopedia on federal practice has observed that "the general policy of restricting appeals by both government and defendants in criminal cases has led to particularly parsimonious use of the [extraordinary] writs in criminal cases." Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 3919 at 661. At the same time, the encyclopedia acknowledges that "court of appeals review by extraordinary writ is burgeoning in criminal cases." Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure*: Jurisdiction § 3936 at 257 [hereafter cited as Wright II]. The discussion on writ review in § 3936 points out that a government application for a writ is "subject to special burdens" because of the defendant's right to a speedy trial and protection against double jeopardy, but the clear import is that the Government can obtain review of a trial ruling in a criminal case by way of an extraordinary writ and that the right to relief is not refused because the Government could not appeal from the trial action. Our own review indicates that the Supreme Court has not acted to enforce, for criminal cases, a special limitation on the writ authority because of the absence of a right to appeal on the part of the Government. *See United States v. United States District Court,* 407 U.S. 297, 301 n. 3, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Nor have the Feder-

al Courts of Appeals been deterred from granting relief to the Government in criminal cases. *See United States v. Lasker,* 481 F.2d 229 (2d Cir. 1973), *cert. denied,* 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974); *United States v. Igoe,* 331 F.2d 766 (7th Cir. 1964), *cert. denied,* 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961 (1965). We are, therefore, convinced of the absence of merit in the petitioners' thesis that lacking authority "to hear appeals on behalf of the Government," a Court of Military Review lacks " 'inherent' power to hear petitions for extraordinary relief on behalf of the Government." We are equally convinced that nothing said in *United States v. Ware, supra,* in regard to "appeals by the Government" establishes as principle that the absence of a right to appeal *per se* makes unavailable a right to extraordinary relief. In fact, the converse is true; the presence of a right to appeal would make unnecessary proceedings for extraordinary relief. When review by appeal is allowed, "the need for the writs has vanished." Wright II, *supra,* § 3936 at 268. We conclude, therefore, that in an appropriate case, the Government may, by application for extraordinary relief, subject a dismissal of charges by a trial judge to the scrutiny of the Court of Military Review. Is this such a case?

### IV. *Was the Grant of Extraordinary Relief Proper?*

Earlier we noted that, in each case, the trial judge concluded that the provisions of the Air Force Manual were directory. In consequence, the judge determined that the appropriate sanction for the Government's violation of its own regulation was dismissal. *See United States v. Dunks,* 1 M.J. 254 (C.M.A.1976); *United States v. Russo,* 1 M.J. 134, 135 (C.M.A.1975). In reversing the trial judge, the Court of Military Review acknowledged that the language of the Manual was "inartful." It also conceded that some Air Force commands had placed such "emphasis on compliance" with the Manual that they may have "elevate[d]" its provisions "to a mandatory level." Nevertheless, the court perceived the Manu-

al to be "a management tool for judge advocates to gauge the progress of their own processing of cases" and it read its provisions to be "hortatory only." The court also concluded that the Manual was "not intended to benefit an accused." 6 M.J. at 510.

Air Force Manual 111–1 is titled "Military Justice Guide." The introductory paragraph states it is the Department of the Air Force's "implementation of the Manual for Courts-Martial, 1969 (Revised Edition)." Paragraph 1–3a provides that, in "justice and fairness to the parties," "expeditious processing of courts-martial is required by law and Air Force policy." It further specifies that "it is Air Force policy that all military justice procedures be accomplished as quickly as feasible, even though statute and case law might permit greater delay."

Other pertinent sections of the Manual are paragraphs 1–3a(2) and 1–3b. These are as follows:

1–3.  *Time Standards*:

.　　　.　　　.　　　.　　　.

(2) Air Force time standards are separate from the overriding strictures noted in (1) [(1) summarizes the requirements of the Uniform Code and Court decisions, such as *United States v. Burton*, 21 U.S. C.M.A. 112, 44 C.M.R. 166 (1971) and *Dunlap v. Convening Authority*, 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974)]; they address the proposition that all military justice matters must move expeditiously regardless of whether the accused is in confinement. The amount of time required to process each case depends on all factors involved in that particular case; thus, in some cases compliance with given time standards will be impossible or impracticable. Nevertheless, these are reasonable standards which may normally be observed without sacrificing thoroughness and fairness for speed. Subparagraph b establishes the time standards for processing courts-martial within the Air Force. Completion of each stage of a court-martial within these standards should be the rule rather than the exception.

b. Charges should be preferred as soon as possible after it has been ascertained that an offense is of such serious nature as to warrant disposition by trial by court-martial; normally, within three days. The following time standards should be observed:

.　　　.　　　.　　　.　　　.

[A list of time for each action in various types of courts-martial is set out.]

■ The context in which a word is used may give meaning to its intention. A word which, in its dictionary meaning, imports an imperative, may emerge in usage as permissive. *United States v. Merritt*, 1 U.S.C. M.A. 56, 1 C.M.R. 56 (1951). Oppositely, a word which normally expresses the discretionary or permissive may be clearly understood, in text, to represent the mandatory. The Court of Military Review acknowledged that, in ordering their actions in courts-martial, some commanders regard the Air Force Manual as command. Whatever the literalness of the text of the Manual, its purpose is paramount. As Judge Brosman observed in *United States v. Padilla*, 1 U.S.C.M.A. 603, 607, 5 C.M.R. 31, 35 (1952): "Effort must be made to effectuate . . . [a writing's] purpose and to avoid rendering it absurd." *See also United States v. Rumely*, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (1953).

The declared purpose of the Air Force Manual is to implement the general law on prompt disposition of a court-martial matter. To that end, it propounds procedures that are to be accomplished within a period of time which could be less than that sanctioned by statute and case law. Speaking of the Second Circuit Judicial Council's Rules Regarding Prompt Disposition of Criminal Cases, which, like the Manual, contemplate more expeditious disposition of a case then otherwise allowed by law, the Court of Appeals observed "that the primary purpose of the . . . Rules was to vindicate the strong public interest in the prompt resolution of criminal prosecutions." *United States v. Lasker, supra* at 233. That the public interest is the primary consideration in a situation of this kind does not

mean that it is the exclusive consideration. In *United States v. Dunks, supra* at 256, we perceived an Army regulation of similar nature to that of the Air Force as benefiting an accused "to a degree by placing a ceiling on the period of pretrial delay." The Manual itself proclaims a concern for "justice and fairness to the parties." In any event, *Lasker* recognized, as this Court did in *Dunks,* that an accused, whose case is handled by the Government in a way contrary to the prescribed provisions on disposition, can raise the matter at trial; and, the judge can grant such relief as is appropriate.

After a hearing on the matter, the trial judge in *Dettinger* determined that the Government's delay was "unnecessary" and for a reason inconsistent with the Air Force Manual and "contrary to public policy." In *Wingard,* the trial judge, also after a hearing, determined that various periods of delay were "lengthy," "unexplained," and in violation of the Manual. The judge further noted that not every failure by the Government to comply with the Manual "required" dismissal of the charges, but he concluded that, in the case presented, dismissal was "the only appropriate remedy." The Court of Military Review did not question the judges' findings; it denied only that they had any right to dismiss the charges.[14]

■ In *United States v. Lasker, supra* at 233, the Court of Appeals pointed out that a "difficult problem" exists for a trial court "when it decides that the period of delay contended for by the government is unreasonable." The court concluded that, in dismissing the charges, the trial judge had applied the rule violated by the Government "in a fashion that does violence to the policies that the Rules were intended to promote, without any offsetting benefit to the public interest." *Id.* at 235. There, the Rule spelled out the particular remedy for a violation, specifically, severance of the respondents' cases from that of a co-accused. Here, the Air Force Manual prescribes no general or special sanction. As a result, the

remedy must be left to the discretion of the trial judge. As the judge in *Wingard* remarked, not every departure from a provision of the Manual justifies dismissal of the charges. But in an appropriate case, dismissal may be an appropriate remedy. In fact, dismissal is the usual remedy for violation of prescriptions for prompt disposition of a case. We conclude, therefore, that a trial judge could order dismissal of charges for unreasonable delays, measured by the standards promulgated in the Air Force Manual.

■ At the beginning of this opinion, we indicated that the office of the extraordinary writ is not to control the decision of the trial judge. On the facts of record, another judge might, perhaps, reach a different conclusion as to the unreasonableness of the delay, and as to the corrective action required. However, no violation of statute or decisional law or any provision of the Air Force Manual appears in the actions taken by the respective trial judges in these cases. Consequently, no grounds exist for extraordinary relief from those decisions.

The decision of the Court of Military Review is reversed, and the record of trial is returned to the Judge Advocate General of the Air Force, with direction to assure that "immediate effect" be given to the trial judge's ruling in each case. *United States v. Ethridge, supra.*

Judge PERRY concurs.

FLETCHER, Chief Judge (concurring in the result):

I concur in the result.

I do not believe it is necessary nor should we decide whether the doctrine of "supervisory" mandamus is available to the Government in courts-martial cases. *See In Re United States,* 598 F.2d 233 n. 6 (D.C. Cir., 1979). Traditionally, the facts of the instant case constitute appeals from the trial judges' rulings and accordingly the doctrine is inapplicable. *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *In Re United States, supra.*

---

14. The Court of Military Review, however, hinted that, in an instance where a command had "elevate[d] . . . [the Manual] to a mandatory level," dismissal of the charges might be appropriate. 6 M.J. 505, 510 n. 7.