**UNITED STATES of America,
Petitioner,**

v.

**Robert BOGAN, SSN 095–32–0296, Lieutenant Colonel, US Army General Court-Martial Judge, Respondent.**

**Misc. Dkt. No. 1982/2.**

**U. S. Army Court of Military Review.**

**22 April 1982.**

Colonel R. R. Boller, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain James C. Underhill, JAGC, represented the petitioner before the Court.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Joyce E. Plaut, JAGC, and Captain Kenneth G. Gale, JAGC, represented the respondent before the Court.

Before CARNE, O'DONNELL and FOREMAN, Appellate Military Judges.

## OPINION OF THE COURT ON PETITION FOR A WRIT OF MANDAMUS

O'DONNELL, Judge:

The Government by Petition for Extraordinary Relief in the Nature of a Writ of Mandamus seeks an order directing the respondent military judge to reverse his ruling excluding certain evidence.

## I. BACKGROUND

Sergeant Richard N. Stamps, Headquarters and Headquarters Detachment, 2d Basic Training Brigade, United States Army Training Center, Fort Jackson, South Carolina, was charged with larceny of 44 Army field jackets in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921, on 4 January 1982. The charges were thereafter referred for trial by general court-martial. Trial commenced on 3 March 1982 with the respondent, Lieutenant Colonel Robert Bogan, as military judge. During an Article 39(a) session on the same day, the defense moved to suppress the field jackets as evidence in the trial. Judge Bogan granted the motion on 4 March 1982. On 10 March, the convening authority, in accordance with Article 62(a) of the Code, requested the judge to recon-

sider his ruling.[1] Upon reconsideration, Judge Bogan adhered to the ruling. He then granted the trial counsel's motion for a continuance to permit the filing of this petition for extraordinary relief. The petition was filed on 1 April 1982, together with an authenticated verbatim transcript of the proceedings. The Judge Advocate General thereupon designated counsel to represent the petitioner and respondent.

## II. EXTRAORDINARY WRITS IN THE COURTS OF MILITARY REVIEW

█ As a court established by Congress, a Court of Military Review is empowered to grant extraordinary relief in appropriate cases.[2] *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979); *United States v. Draughon,* 42 C.M.R. 447 (A.C.M.R.1970) (en banc).

Traditionally, extraordinary writs, including writs of mandamus, have been used, as the name would imply, as extraordinary remedies to prevent an abuse of power by a lower court in acting beyond its authority or refusing to act when required. "The traditional use of the writ [of mandamus] in aid of appellate jurisdiction ... has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so."[3] *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). *See Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *LaBuy v. Howes Leather Company,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). The Supreme Court in *Will v. United States, supra* 389 U.S. at 97–8, 88 S.Ct. at 274–75, opined that a writ of mandamus might lie in criminal cases to prevent an abuse of power. The Court noted, however, that considerations of speedy trial and double jeopardy must be taken into account.

The Court of Military Appeals has considered the use of extraordinary writs at the Court of Military Review level on several occasions. In *Dettinger,* it held that the Government in an appropriate case may "by application for extraordinary relief, subject a dismissal of charges by a trial judge to the scrutiny of the Court of Military Review."[4] *Dettinger v. United States, supra* at 222.

In *United States v. Redding,* 8 M.J. 719 (N.C.M.R.1979), the military judge overruled the convening authority's determination that individual military counsel was not available and abated the proceedings with a view toward dismissing the charges. The Government filed a petition for writ of mandamus with the Navy Court of Military Review. That Court concluded that the trial judge's action as to availability was erroneous but held it was not within its power to grant relief since the trial judge acted within his authority. The Court of Military Appeals on review determined that

1. Article 62(a) provides: "If a specification before a court-martial has been dismissed on motion and the ruling does not amount to a finding of not guilty, the convening authority may return the record to the court for reconsideration of the ruling and any further appropriate action." The convening authority in requesting reconsideration contended that the suppression order in effect amounted to a dismissal of the specification "as there was no other available evidence." The judge accepted that determination and reconsidered. We note that if granting the motion had that effect, it was also tantamount to a finding of not guilty.

2. The All-Writs Act, 28 U.S.C. § 1651(a), provides:

   The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

3. The requirement that the writ be in aid of the appellate court's jurisdiction is codified in the All-Writs Act, quoted above. As the trial in the instant proceedings is by general court-martial, that qualification is met.

4. The Court held that *Dettinger* was not an appropriate case for relief as it found no abuse of power by the military judge in dismissing charges for unreasonable delay. Judge Cook wrote the opinion of the Court and Judge Perry concurred. Chief Judge Fletcher concurred in the result, stating that mandamus was inappropriate because the Government in effect was attempting to appeal the trial judge's ruling. *Dettinger v. United States,* 7 M.J. 216, 224 (1979).

the lower appellate court incorrectly held it could not grant relief as dismissal of charges is an inappropriate remedy for an improper denial of a request for individual counsel.[5]

In two other cases, the Court of Military Appeals upheld the Navy court's denial of the writ. *United States v. Caprio*, 12 M.J. 321 (C.M.A.1981); *United States v. Strow*, 11 M.J. 75 (C.M.A.1981). In *Caprio*, the Government sought relief from the trial judge's action dismissing charges for lack of jurisdiction over an offense committed in a prior enlistment. *United States v. Caprio*, 10 M.J. 586 (N.C.M.R.1980). In *Strow*, the trial judge dismissed the charges for denial of speedy trial. *United States v. Strow*, 10 M.J. 647 (N.C.M.R.1980).[6]

### III. GOVERNING FACTS

We turn now to the facts of the instant case, which are not in dispute as the parties entered into a stipulation of fact for purposes of the motion.

On Friday, 6 November 1981, Major Robert W. Prior, the brigade S–4, returned to his office in the brigade supply warehouse. He discovered that the accused, Sergeant Stamps, who was supposed to be on duty as the "late man," was not present. Major Prior searched for the accused and found him in the warehouse moving a loaded mattress cover. Upon inquiry, the accused stated that he was taking some protective mask carriers to the property disposal office to prepare them for turn-in the following Monday. Major Prior told Sergeant Stamps to finish what he was doing and return to the administrative office. Major Prior believed that Stamps' actions were unusual and waited to see if he would return to the office as directed.

Sergeant Stamps did not do so, but instead proceeded to drag another loaded mattress cover out of the warehouse. Major Prior observed him leave the warehouse area, go across the street to the commissary parking lot, enter a green Mercury Cougar, and drive the car back to the warehouse. At this time, Major Prior saw the accused load two large clear plastic bags containing olive drab material into the trunk of the car. Stamps then drove the car back to the commissary parking lot. At this point, Major Prior called the military police. When a military policeman, Specialist Four Rocky Forbes, arrived in response to the call, Major Prior related to him what he had observed. In the meanwhile, Sergeant Stamps had returned to the warehouse area.

Major Prior and Specialist Forbes then approached the warehouse building, where they met the accused. Major Prior pointed out the green Cougar to Forbes and informed him that that was the car into which the accused had loaded the olive drab items. Forbes asked the accused if he had the keys to the car. The accused responded that he had many keys and produced several sets. Forbes took one set. He walked to the automobile, looked into the back seat, and saw a plastic bag containing what appeared to be field jackets. Forbes then tried the key in the lock. When the key worked, Forbes concluded that the car was the one used by Stamps. He then locked the door and returned to the warehouse area. Requesting Major Prior and the accused to accompany him, he returned to the car, unlocked the door and removed the bag which contained 14 field jackets. He next unlocked the trunk and removed two plastic

---

**5.** The Court of Military Appeals held that the Government may properly pursue review of such a Court of Military Review decision by either a Certificate of Review under Article 67(b)(2), 10 U.S.C. § 867(b)(2), or by an appeal. *United States v. Redding*, 11 M.J. 100 (C.M.A. 1981). Judge Fletcher dissented in part because he concluded that essentially the Navy Court of Military Review determined that the trial judge applied an improper standard for review of an alleged abuse of discretion, an action not justifying extraordinary relief.

**6.** In a recent case, the Navy Court granted relief to the Government from the ruling of the trial judge dismissing the charges for denial of speedy trial on the rationale that his ruling was clearly erroneous. *United States v. Wholley*, 13 M.J. 574 (N.M.C.M.R. 19 March 1982).

bags each containing 15 jackets. Forbes then took Sergeant Stamps into custody.[7]

The parties also stipulated that Sergeant Stamps had permission from the owner to use the automobile; that Sergeant Stamps did not consent to the search; and that probable cause to search existed.

The judge, in granting the suppression motion, found probable cause to search but ruled that authorization from an appropriate official was also required as he found no exigencies otherwise justifying the search.

## IV. AUTOMOBILE SEARCHES

The Supreme Court has emphatically expressed its preference for conducting searches and seizures pursuant to search warrants, to the extent of holding that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted).[8] One of these departures from the warrant requirement is the so-called automobile exception. The genesis of this concept is found in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which concerned a search of an automobile stopped on a public highway by federal agents who had probable cause to search. The Court upheld the warrantless search and seizure because under the circumstances obtaining a warrant would have been impracticable. The rule was extended in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), to the search of an automobile after it had been stopped on a highway and removed to a police station. The underlying rationale of *Carroll* and *Chambers* is that there is

a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Carroll v. United States, supra* 267 U.S. at 153, 45 S.Ct. at 285. *See Coolidge v. New Hampshire*, 403 U.S. 443, 459–60, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564 (1971) (plurality opinion of Justice Stewart). The crucial difference, of course, is the inherent mobility of an automobile or other vehicle. Another rationale that is receiving increased favor is the lesser expectation of privacy in automobiles as contrasted with dwellings. *See, e.g., United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

Whether this inherent mobility is itself a sufficient exigency or whether more is required is not completely free from doubt. The prosecution in the instant case relied on the former position, the defense (as well as the trial judge) the latter. In *Carroll*, the vehicle was stopped on an open highway, so there were additional exigent circumstances. Likewise, in *Chambers*, the stop was on a public road. The plurality found that the authority to search at this time survived the delayed search at the police station. The issue is far from settled. *See, e.g., Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).[9]

---

**7.** Specialist Forbes had called the military police desk before conducting the search and was informed that if the person who saw Sergeant Stamps place the items in the trunk were present at the scene, no search authorization was necessary. Forbes therefore did not seek authorization from a responsible authority.

**8.** As the Court stated in *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d

419 (1970): "Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization to search."

**9.** In *Dombrowski*, the Court pointed out 413 U.S. at 441–42, 93 S.Ct. at 2528 that "warrantless searches of vehicles by state officers have been sustained in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non-

This Court has also recognized the automobile exception but has not always focused on the question of whether the inherent mobility of the vehicle provides sufficient exigency for a warrantless search. *See, e.g., United States v. Burrell,* 5 M.J. 617 (A.C.M.R.), *pet. denied,* 6 M.J. 105 (C.M.A.1978), *petition for reconsideration denied,* 6 M.J. 161 (C.M.A.1979); *United States v. Bishop,* 4 M.J. 671 (ACMR 1977); *United States v. Garcia,* 3 M.J. 927 (A.C.M.R.1971). *Cf. United States v. Lewis,* 50 C.M.R. 585 (A.C.M.R.1975).

## V. DECISION ON PETITION FOR WRIT OF MANDAMUS

■ We conclude that this is not an appropriate case in which to issue a writ of mandamus. "... it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States, supra* at 95, 88 S.Ct. at 273 (citation omitted). The Government must demonstrate that the judge exceeded his authority in ruling or that he refused to rule when required.

■ The most that can be shown in this case is that Judge Bogan may have erred in ruling on a matter within his jurisdiction. But this is not the test. The office of mandamus "is not 'to control the decision of the trial court', but rather merely to confine the lower court to the sphere of its discretionary power." *Will v. United States, supra* at 104, 88 S.Ct. at 278. *See Dettinger v. United States, supra* at 224. The judge in this case was acting within this sphere when he granted the motion to suppress.

existent." The statement was reiterated in *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977). The concept is still undergoing development. *See Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); *Colorado v. Bannister,* 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980).

**10.** A leading authority in the area has quoted with approval the comment of Judge Wachtler in *People v. Brosnan,* 32 N.Y.2d 254, 263, 344

Even assuming that the rulings of a trial judge might be so contrary to settled law as to constitute an abuse of power (as in *Redding*), this is not the case in the matter before us in view of the unsettled state of the law.[10] The recently adopted Rules of Evidence also do not assist the petitioner, as the applicable rule (315(g)(3)) merely codifies in general terms the automobile exception however it might be interpreted by the federal courts at any given time.

For the foregoing reasons, the Petition for Writ of Mandamus is DENIED.

Senior Judge CARNE and Judge FOREMAN concur.

N.Y.S.2d 900, 907, 298 N.E.2d 78, 83 (1973), that the vehicle-search decisions of the Supreme Court constitute a "labyrinth of judicial uncertainty." 2 La Fave, *Search & Seizure, A Treatise on the Fourth Amendment* 509 (1978). Justice Rehnquist has noted that the Supreme Court decisions "suggest that this branch of the law is something less than a seamless web." *Cady v. Dombrowski,* 413 U.S. 433, 440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). And Justice Powell has found the law concerning automobile searches to be "intolerably confusing." *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).