**UNITED STATES, Petitioner,**

v.

**Thomas W. MITCHELL Lieutenant Commander (O–4) Judge Advocate General's Corps U.S. Navy Special Court-Martial Judge, Respondent,**

and

**Constance E. Flint 228 86 1286 Tradesman Second Class U.S. Navy, Real Party in Interest.**

**Miscellaneous Docket No. 82–17.**

U. S. Navy-Marine Corps Court of Military Review.

28 March 1983.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LCDR Richard K. Delmar, JAGC, USNR, Appellate Defense Counsel.

LCDR Claude P. Goddard, JAGC, USN, Appellate Defense Counsel.

LT William V. Cerbone, Jr., JAGC, USNR, Appellate Government Counsel.

Before SANDERS, Senior Judge, and MAY and CASSEL, JJ.

## OPINION

### PER CURIAM:

This case arrives before us as a result of a Government petition for an extraordinary writ.

The factual circumstances of the case as extracted from a partially summarized and partially verbatim record are as follows:

## FACTUAL BACKGROUND

A command urinalysis examination ordered by the commanding officer was initiated on 16 August 1983 at Fleet ASW Training Center, Atlantic, Norfolk, Virginia. This was the third of three random examinations conducted during the period July-August 1982. The inspection was conducted pursuant to the commanding officer's determination that such an inspection was warranted in relation to the unit's fitness and readiness for duty.

The procedure utilized involved a random selection method utilizing the last digit of the individual's social security number. The number selected for the 16 August inspection was "6". The standard procedure involved requiring all personnel in the command whose social security number ended in "6" to report for the urinalysis examination unless an individual was unavailable. If unavailable on the day of the inspection, the individual was required to report for the examination when next available.

The accused in this case, Petty Officer Flint, whose social security number ends in "6", was on liberty on 16 August and was apparently contacted and directed to return to the command on 17 August in order to provide a urine sample. Upon arrival at the command, she was met by a member of the Master-at-Arms force and escorted to a female head and directed to provide a urine sample. In response to her contention that she was physically not able to produce a urine sample at that time, she was escorted to the unit library, directed to remain in the library and consume normal fluids until such time as she provided the urine sample. She subsequently provided a urine sample. (We cannot ascertain from the evidence in the record whether the accused actually consumed any fluids prior to providing the sample or the length of time involved. For purposes of our decision, however, we assume that she was able to provide a urine sample following the consumption of water or other normal fluids such as coffee or soft drinks.)

The test results obtained by the government following the receipt of the sample was the basis of a subsequent charge of wrongful use of marijuana in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892.

## DISCUSSION

At a 39(a), 10 U.S.C. § 899(a) session, the military judge granted a defense motion to suppress the test results, making the following findings:

MJ: As to the defense various motions, first, the court does find that jurisdiction does exist for the court to consider these issues in this case. Second, there is one issue that the court intends to rule on today which will make it unnecessary to rule on the remaining issues, specifically, that this particular urinalysis test was not a valid inspection pursuant to Rule 313(b). The Court does find as facts that there had been a previously scheduled random inspection of approximately ten percent of the staff of Fleet ASW Training Center; that the inspection was scheduled for the 16th and the accused was at work that evening and therefore missed the examination, and was recalled from liberty on the 17th for the purpose of giving a urine specimen; and that on the morning when she appeared on the 17th she was unable, when requested, to provide a specimen, and was then escort-

ed to the library directed to remain and consume fluids until such time as she could urinate and provide the necessary specimen. Assuming, without deciding in this particular case, that overall urinalysis is a suitable subject for an inspection under 313, and that all the other preliminary requirements of 313 are met in this case, the court does feel that 313(a) does require that the inspections of 313—the evidence produced by inspections in rule 313 are admissible and relevant when not otherwise inadmissible under the rules; thereby indicating that Rule 313 must be read in conformity with the Rules of Evidence; and further, that in 313(b) it is specifically referred that 313(b) must comply with the provisions of 312 where applicable. In this particular instance, section 312(e) provides "That the compelling of a person to ingest substances for the purpose of locating property described above ..." reading, "weapons, contraband, or evidence of crime", "... or to compel the bodily elimination of such property, is a search within the meaning of this section", and that under this particular Rule, such a search may be made only upon warrant or authorization under Rule 315, conducted in a reasonable fashion, and with appropriate medical personnel where necessary. In this particular instance, the compelling of the accused to ingest fluid for the purpose of eliminating her urine, that is, producing a specimen, takes this case out of 313 and puts it into 312. In-as-much as there was no search warrant or authorization issued under Rule 315, the evidence received or discovered as a result of the urinalysis is not admissible at court-martial. Do both counsel understand the ruling of the court?

That ruling precipitated a Government petition for an extraordinary writ in the form of mandamus to this Court.

On 26 January 1983, this panel denied the Government's request for the issuance of a writ of mandamus to the trial judge. *See United States v. Mitchell,* 15 M.J. 654 (N.M. C.M.R.1983).

We believe that the clear majority of the panel found the legal reasoning of the trial judge to be wrong. However, since the granting of an extraordinary writ is discretionary, it was denied in that instance because it was not necessary since there was an alternative method of allowing the trial judge to reconsider his decision and legal conclusions after receiving the benefit of our opinions concerning his legal interpretation. *See United States v. Mitchell,* (Cassel, J., concurring). See also *Mitchell,* (May, J., dissenting).

The convening authority then returned the record for reconsideration in light of our decision and opinions, which the military judge purported to do. The military judge went on to make findings of fact which have no apparent basis in the record and which tended to support his prior determination that the results of the urinalysis would be inadmissible. Upon reconsideration he issued, in pertinent part, the following ruling:

... that the urine sample was taken from Petty Office Flint while she was in the status of arrest, Manual for Courts-Martial, Paragraph 18(a);

Next, Petty Officer Flint was ordered, i.e. compelled, to ingest fluids until she could produce a urine sample, and had she refused to do so, she might very well have been subject to disciplinary action for willful disobedience of an order;

Next, it appears to this court that the facts of this case do fall squarely within the plain language of the Military Rule of Evidence 312(e);

Next, a compelled ingestion as described in Military Rule of Evidence 312(e) is one different from and less intrusive than the nonconsensual acts also described in 312(e) and (d). The Rule, however, still affords the protection of Military Rule of Evidence 315 to an accused where the intrusion involved rises only to the level of a compelled ingestion;

Next, that Military Rule of Evidence 313 clearly indicates, both in subsection (a) and in the closing remarks of (b), that the provision—that its provisions are limited by Rule 312 where applicable.

This is the issue that was squarely before the Court on the initial writ, and a reading of our opinions impels the conclusion that two members of this panel found the trial judge's ruling to be legally objectionable even though the government's petition at that point was denied.

It is clear from the review of the record that the military judge concluded incorrectly that since the writ was not granted his legal interpretation was approved. A fair reading of his discussion with the trial counsel when that officer was requesting a continuance in order to apply for another writ shows that the military judge considered the original decision by this panel to deny the writ of mandamus to be conclusive of the legal issues involved and to have affirmed the correctness of his view. He must be dissuaded from that interpretation.

The obvious touchstone for evaluating the extent of the government intrusion here is *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), where the Supreme Court appropriately struck down the evidence derived from the forceful use of an emetic solution transmitted via a stomach pump to produce vomiting, and the expelled capsules which were the subject of police actions.

Other examples of unreasonable nonconsensual seizures which have been judicially barred include *United States v. Cameron,* 538 F.2d 254 (9th Cir.1976), where customs agents suspected an individual had hidden contraband in his rectal cavity. Following two forced rectal probes two enemas, and a liquid laxative, contraband, not unexpectedly, was obtained. The conviction was reversed. The methods used were an unreasonable level of bodily intrusion. (We note that the court posited that waiting for the normal bodily elimination process would have been permissible.) In *People v. Parham,* 60 Cal.2d 378, 33 Cal. Rptr. 497, 384 P.2d 1001 (1963) police hit suspect on back of head with club to force disgorgement of evidence held in mouth. "Brutal and offensive." After a suspect placed evidence in mouth to avoid police seizure, a policeman placed service revolver to head of suspect, stating: "spit it out or I'll blow your head off". The court in *People v. Allen,* 86 Cal.App.3d 948, 150 Cal.Rptr. 568 (1978), found the evidence produced from this conduct inadmissible. Nature of police conduct in pulling out samples of body hair from a juvenile suspect in *State v. Gammill,* 2 Kan.App.2d 627, 585 P.2d 1074 (Kan. App.1978), found by court to be "shocking."

While the trial judge here may be able to accomplish the analytical leap from such obviously excessive and barbaric extractions of physical evidence to the circumstances presented in this case, we can find no reasonable basis for his decision. Petty Officer Flint, the accused here, was required to remain in the unit library area and consume fluids until such time as she could provide a urine sample, for a unit random urinalysis inspection.

We find this requirement represented minimal, if any, bodily intrusion or infringement of privacy and was a reasonable and controlled procedure balancing properly the individual rights of Petty Officer Flint and the interests of the command. The procedure used is clearly and significantly distinct from the procedures symbolized in the above cases which involve brutality, unreasonable force, or unacceptable invasions of privacy or incursions into the integrity of the human body contemplated in the strictures of MRE 312(e).

We do not simply substitute subjective, individual, opinions for those of the trial judge here. We understand that the reversal of a trial judge's ruling cannot rest upon the mere substitution of personal opinions for the at-trial rulings. We find, instead, that Judge Mitchell's view here that requiring the subject of an apparently valid command urinalysis inspection to drink fluids normally consumed in the course of daily activities (as compared to emetic, laxative, or other chemical solutions whose function is the involuntary forceful expelling of digestive contents) represented the type of procedures addressed in MRE 312(e), is unsupported by any cited authority or commentaries, and when subjected to objective analysis is clearly unreasonable.

This is not, contrary to contentions of respondent's counsel, a mere difference of opinion between the judges of this panel and respondent. It is our finding that the trial judge here rendered an objectively unreasonable ruling and has thereby abused his discretionary authority.

We do not find in *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979), a bar to our action here. *Dettinger* simply recognizes, in our view, the inherent appellate power to confine trial judges to the appropriate sphere of their discretionary authority. If we accept counsel for the respondent's interpretation that *Dettinger* also bars this Court from any action as long as the trial judge renders a ruling within an area of his discretionary power, then decisions supported by no reasonable analysis would be immune from appellate control.

Accordingly, this Court finds that the decision of the military judge that MRE 312(e) applies to this case to be legally incorrect and an objectively unreasonable interpretation of the law. The petition by the Government is therefore granted. The decision of the trial judge suppressing the government urinalysis evidence is reversed. The accused may still present evidence on the issue and a military judge may determine anew the admissibility of the results of the urinalysis in this case with this proviso: assuming the evidence offered thus far remains unchanged, he may not use, as a basis to exclude the urinalysis test results in this case, his earlier reference to MRE 312(e); especially any requirement purportedly created by 312(e) to require under MRE 315 probable cause for a search warrant.

Under the circumstances it appears that it would be advisable for the respondent to consider recusing himself from further participation in this case.

The record of the proceedings are returned to the Judge Advocate General of the Navy for remand of the record to the convening authority for actions consistent with our decision.

SANDERS, Senior Judge (dissenting):

In arriving at his decision to bar the results of the urinalysis the trial judge relied on Military Rules of Evidence 313 and 312. The former requires that an inspection be conducted in a reasonable fashion and comply with Rule 312, if applicable. The latter circumscribes the use of evidence obtained when an individual is required to ingest a substance for the purpose of compelling the bodily elimination of the evidence. Right or wrong, the military judge's application of these rules to the facts of the case was not the product of a clear distortion of the English language nor was it contrary to a well settled body of law. *United States v. Wade,* 15 M.J. 993 (N.M. C.M.R.1983); *United States v. Labella,* 14 M.J. 688 (N.M.C.M.R.1982).

I am concerned that the Court, in a commendable desire not to throw unnecessary road blocks in the way of a reasonable approach to the Navy's drug problem, is distorting what has historically been an extraordinary remedy into a substitute for a governmental appeal, a course we may not follow. *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979). I, therefore, dissent.